**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 93-7116

(Summary Calendar)
_____

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

versus

JAIME ORTIZ-GRANADOS,
Defendant-Appellant.

_____

Appeal from the United States District Court
For the Southern District of Texas

_____
(January 4, 1994)

Before JOLLY, WIENER, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Jaime Ortiz-Granados ("Ortiz") was convicted of possessing, importing, and conspiring to possess and import over 100 kilograms of marihuana,[1] and was sentenced by the district court to a term of 90 months in the custody of the Bureau of Prisons.  Ortiz appeals his sentence, claiming that the district court erred in enhancing his base offense level for possession of a firearm, under U.S.S.G. § 2D1.1(b)(1),[2] and for assaulting a law enforcement officer, under U.S.S.G. § 3A1.2(b).  We affirm the district court in all respects.

_____

[1]      _See_ 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), 846, 952(a), 960(b)(2), and 963 (1988 & West Supp. 1993).

[2]      United States Sentencing Commission, _Guidelines Manual,_ § 2D1.1(b)(1) (Nov. 1992).

While on duty along the Rio Grande River, United States Border Patrol agents discovered a group of ten to twelve people at the riverbank unloading large bundles of marihuana from a raft. When one of the agents identified himself, a shot was fired from the middle of the group. During the subsequent exchange of gunfire, the group scattered. Ortiz was pursued and found hiding by the riverbank. When arrested, Ortiz did not possess a firearm.

Ortiz was convicted of possessing, importing, and conspiring to possess and import in excess of 100 kilograms of marihuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), 846, 952(a), 960(b)(2), and 963. At sentencing, the district court enhanced Ortiz's base offense level by two levels for possession of a firearm, pursuant to U.S.S.G. § 2D1.1(b)(1), and by 3 more levels for assaulting a law enforcement officer, pursuant to U.S.S.G § 3A1.2(b). Ortiz' punishment range, calculated at an offense level of 29, with a criminal history category of I, was 87-108 months. The district court sentenced Ortiz to a term of 90 months in the custody of the Bureau of Prisons.

**II**

A

Ortiz claims that the district court erred by assessing a two level sentencing enhancement for possession of a firearm pursuant to U.S.S.G. § 2D1.1(b)(1). For defendants convicted of certain drug-related offenses, § 2D1.1(b)(1) directs: "If a dangerous weapon (including a firearm) was possessed, increase [the

defendant's offense level] by 2 levels."  Application note 3 of the Commentary to that section states that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  *Id.* comment. (n.3).  We have held that the "clearly improbable" standard of note 3 governs the application of § 2D1.1(b)(1).[3]  Ortiz contends, nevertheless, that we should "replace" the "clearly improbable" standard because it violates due process by shifting the burden of proof at sentencing from the government to the defendant.  We disagree.  "[I]t is the firm rule of this circuit that one panel may not overrule the decisions of another."  *United States v. Taylor,* 933 F.2d 307, 313 (5th Cir.), *cert. denied,* ___ U.S. ___, 112 S.Ct. 235, 116 L. Ed. 2d 191 (1991).  As a result, we may not, as Ortiz asks, "replace" a standard of law adopted by a prior panel.

**B**

Ortiz further contends that the district court erred by applying the enhancement for assault on a law enforcement officer, pursuant to U.S.S.G. § 3A1.2(b).  Section 3A1.2(b) provides for a three level increase in a defendant's offense level if

---

[3]     *See United States v. Webster*, 960 F.2d 1301, 1310 (5th Cir.) ("Once it is established that a firearm was present during the offense, the district court should apply the enhancement [under § 2D1.1(b)(1)] *unless* it is clearly improbable that the weapon was connected with the offense." (citing application note 3)), *cert. denied*, ___ U.S. ___, 113 S.Ct. 355, 121 L. Ed. 2d 269 (1992); *United States v. Mueller*, 902 F.2d 336, 345 (5th Cir. 1990) ("The upward adjustment for the weapons is to be applied `unless it is clearly improbable that the weapon was connected with the offense.'" (quoting application note 3)); *see also Stinson v. United States,* ___ U.S. ___, ___, 113 S. Ct. 1913, 1915, ___ L. Ed. 2d ___ (1993) (holding that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline").

during the course of the offense or immediate flight therefrom, the defendant or a person for whose conduct the defendant is otherwise accountable, knowing or having reasonable cause to believe that a person was a law enforcement or corrections officer, assaulted such officer in a manner creating a substantial risk of serious bodily injury . . . ."

U.S.S.G. § 3A1.2(b).[4] Ortiz argues that § 3A1.2(b) is inapplicable here because it applies only to offenses having individuals as victims, whereas his offense is a "victimless" crime. Because Ortiz challenges the district court's legal conclusion that § 3A1.2 is applicable, we review the district court's ruling de novo. *See United States v. Gonzalez,* 996 F.2d 88, 91 (5th Cir. 1993) ("We review *de novo* the district court's legal conclusions with respect to the guidelines." (citing *United States v. Suarez,* 911 F.2d 1016, 1018 (5th Cir. 1990); *United States v. Sarasti,* 869 F.2d 805, 806 (5th Cir. 1989))).

Ortiz relies on application note 1 of the commentary to § 3A1.2, which states, "This guideline applies when specified individuals are victims of the offense." U.S.S.G. § 3A1.2, comment. (n.1).[5] Since no "specified individuals" were victims of

---

[4] Section 3A1.2(a) provides for an official victim enhancement if "the victim was a government officer or employee, a former government officer or employee; or a member of the immediate family of any of the above, and the offense of conviction was motivated by such status." It is undisputed that subsection (a) is inapplicable here, since Ortiz' offense of conviction))possessing, importing, and conspiring to possess and import marijuana))was not motivated by the Border Patrol agents' status as government officers or employees.

[5] In its entirety, application note 1 reads: "This guideline applies when specified individuals are victims of the offense. This guideline does not apply when the only victim is an organization, agency, or the government." U.S.S.G. § 3A1.2, comment. (n.1).

Ortiz' offense[6]))possessing, importing, and conspiring to possess and import marihuana))note 1 would foreclose enhancement of Ortiz' offense level under § 3A1.2(b).[7]  "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States,* ___ U.S. ___, ___, 113 S. Ct. 1913, 1915, 123 L. Ed. 2d 598 (1993).  We reject Ortiz' argument, because we conclude that application note 1 represents a plainly erroneous reading of § 3A1.2(b), and therefore should not be followed.

Several factors support our conclusion that application note 1's reading of § 3A1.2(b) is plainly erroneous.  First of all, application note 1 is in direct conflict with application note 5. Under application note 1, the enhancement in subsection (b) would not be imposed unless the victim of the offense were among the individuals specified in subsection (a)))government officers and employees and their relatives.[8]  *See* U.S.S.G. § 3A1.2(a). Application note 5, however, provides that subsection (b) applies

_____

[6]    Ortiz' Presentence Investigation Report ("PSR") stated, "There are no identifiable victims of the offense."  While we recognize that no "specified individuals" were the victims of Ortiz' offense, we do not decide whether his offense is, as he argues, a "victimless crime."

[7]    *See United States v. Powell,* 6 F.3d 611, 613 (9th Cir. 1993) (observing that "Note 1 . . . would preclude the subsection (b) enhancement" because no "specified individuals" were victims of the crime).

[8]    Were we to apply application note 1 to § 3A1.2(b), we would look to § 3A1.2(a) for the "specified individuals" referred to by the note, since sub-section (a) is the only part of § 3A1.2 and its commentary which specifies individual victims.  *See Powell,* 6 F.3d at 613 ("Note 1 by its terms would preclude the subsection (b) enhancement because the individuals specified in subsection (a) were not the victims of the offense of conviction.").

to assaults on law enforcement officers in the course of, or in immediate flight following, an offense such as bank robbery, *see id.*, comment. (n.5), the victim of which is not necessarily one of the individuals specified in subsection (a). Note 5 further states that subsection (b) "may apply in connection with a variety of offenses that are not by nature targeted against official victims." *Id.* Application notes 1 and 5 are therefore in conflict.

Given the conflict between these two application notes, we conclude for several reasons that note 5, rather than note 1, should govern the application of § 3A1.2(b). First of all, application note 5, on its face, explicitly applies to subsection (b), *see id.*, and was added to the guidelines at the same time as subsection (b).[9] Application note 1, by contrast, was part of § 3A1.2 before the addition of subsection (b), and was not amended when subsection (b) was added.[10] In light of this history, the Ninth Circuit recently held that application note 1 was intended by the Sentencing Commission to apply only to § 3A1.2(a). *See United States v. Powell,* 6 F.3d 611, 613 (9th Cir. 1993). That court stated:

> In 1988, [§ 3A1.2] was amended and subsection (b) added. The Sentencing Commission did not alter Note 1; however, it added Note 5 to interpret subsection (b). Reading [§3A1.2] in conjunction with the Commentary, it appears that the Commission intended that Note 1 would apply only to subdivision (a), as was the situation in the original version. Unfortunately, the Commission did not amend Note 1 when it amended the Guideline.

---

[9] *See* United States Sentencing Commission, *Guidelines Manual,* app. C, amend. 247 (1992) (inserting both subsection (b) and application note 5).

[10] *See id.* amends. 246–48.

*Id.* Furthermore, application of note 1 to subsection (b) is intrinsically awkward, since subsection (b), unlike note 1, does not refer to "victims" of the offense.[11] In light of these factors, we conclude, as did the Ninth Circuit in *Powell,* that application note 5, rather than application note 1, should govern § 3A1.2(b). This resolution of the conflict between application notes 1 and 5 is consistent with our prior cases,[12] and those of other circuits,[13] applying § 3A1.2(b). We therefore reject Ortiz' argument that his offense level should not have been enhanced under § 3A1.2(b) because the victims of his crime were not specified individuals under application note 1.

### C

Lastly, Ortiz argues that there was no evidence that the assault on the Border Patrol agents was reasonably foreseeable to him, and that enhancement of his sentence under § 3A1.2(b) is

---

[11]    As we have indicated, it is possible to turn to subsection (a) in order to identify the "specified individuals" alluded to by note 1. However, nothing in § 3A1.2 directs us to refer to subsection (a) in applying subsection (b). The two subsections appear to operate independently.

[12]    *See Gonzalez,* 996 F.2d at 92-93 (affirming § 3A1.2(b) enhancement where officer was assaulted in course of kidnapping, and victim of kidnapping was neither a government officer or employee nor a relative of either).

[13]    *See United States v. Fleming,* 1993 WL 417760 (8th Cir. 1993) (affirming § 3A1.2(b) enhancement even though defendant argued that his offense))being a felon in possession of a firearm))"ha[d] no official victim since the `victim' [was] society in general"); *Powell,* 6 F.3d at 614 ("Note 1 does not preclude application of the official victim enhancement where an official victim is assaulted within the meaning of subsection (b). In those instances, the sentencing court must ignore Note 1 and apply § 3A1.2(b)."); *United States v. Johnson,* 977 F.2d 1360, 1382-83 (10th Cir. 1992) (affirming § 3A1.2(b) enhancement for defendant convicted of narcotics and weapons possession offenses), *cert. denied,* ___ U.S. ___, 113 S. Ct. 1024, 122 L. Ed. 2d 170 (1993); *United States v. Muhammad,* 948 F.2d 1449, 1457-58 (6th Cir. 1991) (affirming § 3A1.2 enhancement where defendant assaulted officer in course of escape from bank robbery), *cert. denied,* ___ U.S. ___, 112 S. Ct. 1239, 117 L. Ed. 2d 472 (1992).

therefore premised on a presumption that assaults on law enforcement officers are reasonably foreseeable in every drug conspiracy.[14] Ortiz contends that such a presumption unconstitutionally shifts the burden of proof at sentencing from the state to the defendant.

We have observed that firearms are "tools of the trade" of drug traffickers, and that sentencing courts may therefore "ordinarily infer that a defendant should have foreseen a co-defendant's possession of a dangerous weapon, such as a firearm," where the government proves the existence of a drug distribution scheme. *See United States v. Aguilera-Zapata,* 901 F.2d 1209, 1215-16 (5th Cir. 1990). Ortiz suggests that a similar inference))that a defendant engaged in a drug distribution scheme should foresee a co-defendant's assault on a law enforcement officer))was drawn by the district court in this case, and that that inference amounts to a presumption that assaults on law enforcement officers are reasonably foreseeable in connection with every drug conspiracy. Assuming *arguendo* that the district court drew such an inference in sentencing Ortiz, we disagree with his argument that such an inference shifts the burden of proof to the defendant at sentencing. While approving a similar inference in the context of possession of firearms, *see id.*, we held that in that context the burden of proof at sentencing was on the government. *See id.* ("The

---

[14] *See* U.S.S.G. § 1B1.3(a)(1)(B) (providing that adjustments to a defendant's offense level))such as the one described in § 3A1.2))are determined "in the case of a jointly undertaken criminal activity" on the basis of "all *reasonably foreseeable* acts and omissions of others in furtherance of the jointly undertaken criminal activity").

burden of proof in this respect is on the government under a preponderance of the evidence standard."); *Suarez,* 911 F.2d at 1019 n.1 ("*Aguilera-Zapata* clearly places the burden on the government to show that a co-defendant `knowingly possessed' a weapon."). The presumption which Ortiz posits has no greater tendency to shift the burden of proof at sentencing from the government to the defendant. We therefore reject Ortiz' argument.

### III

For the foregoing reasons, we **AFFIRM** the decision of the district court in all respects.