IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-60712
_____


UNITED STATES OF AMERICA,

                    Plaintiff - Appellee - Cross-Appellant,

                         versus

RONALD JOSEPH CLAYTON,

                    Defendant - Appellant - Cross-Appellee.

_____

Appeals from the United States District Court for the
                Northern District of Mississippi
_____
                      April 12, 1999
Before JOLLY, WIENER, and PARKER, Circuit Judges.

E. GRADY JOLLY, Circuit Judge


     Ronald Joseph Clayton, former Chief Deputy Sheriff of DeSoto County, Mississippi, stands convicted of violating the civil rights of an arrested woman by kicking her in the head. He also was convicted of making a false statement of material fact to the FBI when he denied the use of unreasonable force during the incident of arrest. On appeal, Clayton challenges the district court's denial of his motion for judgment of acquittal on the grounds that the government had failed to establish venue. Clayton also contends that the district court gave an improper

modified <u>Allen</u> charge to the jury.  Finally, Clayton challenges the sufficiency of the evidence supporting his convictions.

The government cross-appeals.  It contends that the district court erred in failing to enhance Clayton's offense level by two levels, first, under § 3A1.3 and, second, under § 3C1.1 of the United States Sentencing Guidelines because Freeman was physically restrained (handcuffed) during the time she was kicked, and because Clayton obstructed the federal investigation of the incident by warning officers at the scene of the offense to keep silent about what they saw.

We affirm each of Clayton's convictions, and his sentence for making a false statement of material fact.  We vacate Clayton's sentence with respect to the civil rights conviction and remand for resentencing.

I

We do not retry a case in the appellate court.  We therefore view the facts in the light most favorable to the verdict.  We will very briefly state those facts.  Clayton, during the drug-related arrests of Jaefis Totten and Jennifer Freeman on January 13, 1994, kicked Freeman in the head as she lay facedown and handcuffed.  Clayton was also charged with kicking Totten and striking him with a police-issued flashlight.  On March 9, 1995, during the course of a federal investigation of the incident

2

conducted by the FBI, Clayton expressly denied kicking, striking, or using force against the pair.

Some two years later, on May 22, 1997, the grand jury indicted Clayton on one count of depriving Totten of his right to be secure from unreasonable force by one acting under the color of law,[1] one count of depriving Freeman of her right to be secure from unreasonable force by one acting under the color of law, and one count of making a false statement of material fact to the FBI.[2]

The case was tried to a jury in July 1997. The jury, after five and one-half hours of deliberating, informed the district court that it was unable to reach a verdict on one of the charges. The court gave the jury a modified <u>Allen</u> charge, instructing it to keep deliberating. The jury returned the split verdict, now the subject of this appeal, forty-five minutes after the district court gave the charge. The jury found Clayton guilty of count 2, violating Freeman's civil rights and count 3, making a false statement of material fact to the FBI. The jury, however, acquitted Clayton of depriving Totten of his civil rights.

On October 15, 1997, the district court sentenced Clayton to twelve months and one day imprisonment for the civil rights conviction and twelve months and one day imprisonment for the

---

[1] 18 U.S.C. § 242.

[2] 18 U.S.C. § 1001.

false statement conviction. The district court ordered Clayton's sentences to be served concurrently. It also fined him a total of ten thousand dollars, five thousand for each conviction. The district court further ordered Clayton to be placed on supervised release after his imprisonment for a term of three years. Finally, in sentencing Clayton, the district court rejected the government's argument that under U.S.S.G. § 3A1.3 Clayton's offense level should be adjusted upward by two-levels because he assaulted Freeman while she was handcuffed. The district court also rejected the government's recommendation for the two-level obstruction of justice enhancement under U.S.S.G. § 3C1.1 on the grounds that Clayton obstructed the subsequent FBI investigation of the incident when, at the scene of the offense, he threatened the officers with termination unless they kept quiet about what they had seen.

On appeal, Clayton argues that the district court erred in denying his motion for judgment of acquittal because the government failed to prove that venue for the indicted offenses lay in the Northern Judicial District of Mississippi. Second, Clayton contends that the district court's modified <u>Allen</u> charge was prejudicial and coercive. Finally, Clayton challenges the sufficiency of the evidence.

4

On cross-appeal, the government contends that because Freeman was handcuffed when Clayton kicked her in the head, the district court erred in failing to enhance Clayton's offense level under the victim restraint adjustment, U.S.S.G. § 3A1.3. The government further contends that because Clayton threatened officers with termination if they reported the offense, the district court erred in refusing to apply the obstruction of justice adjustment, U.S.S.G. § 3C1.1.

After a careful review of the record, we are satisfied that the government adequately established venue of the charged offenses.[3] We also find that the sufficiency of the evidence supports Clayton's convictions for violating Freeman's civil rights[4] and for making a false statement of material fact the FBI.[5]

_____

[3]Viewing all the evidence in the light most favorable to the government, we conclude that the government established that each of Clayton's charged offenses occurred in the Northern Judicial District of Mississippi. United States v. Leahy, 82 F.3d 624, 633 (5th Cir. 1996)(citations omitted). There is no dispute that the acts of unreasonable force underlying the charges against Clayton occurred along Highway 178, eastbound. FBI Agent John Lavoie testified that Highway 178 is located in DeSoto County, Mississippi. Similarly, the conversation forming the basis of the false statement of material fact to the FBI also occurred in DeSoto County, specifically, at the DeSoto County Sheriff's Department. Finally, Clayton himself admitted at trial that DeSoto County, Mississippi, is located in the Northern Judicial District of Mississippi. In the light of this proof, it is unnecessary for us to elaborate further on the other evidence establishing venue in this case.

[4]The evidence is clearly sufficient to support the civil rights conviction. Three of the officers who witnessed Clayton

We therefore turn to address Clayton's remaining argument and the arguments raised by the government on cross-appeal.

## II

### A

Clayton argues that each of his convictions should be reversed because the district court's modified <u>Allen</u> charge[6] was both prejudicial and coercive. Specifically, Clayton contends that the <u>Allen</u> charge was coercive because the district court alluded to sequestering the jury in the course of its

---

kick Freeman in the back of the head testified that at the time of assault, Freeman lay on the ground facedown, that she did not resist arrest, and that she posed no threat of harm to the officers. Officer Steve Bierbrodt testified that Freeman was handcuffed during the offense. The three officers further agreed that Clayton's use of force in this manner was either unjustified or without cause. In finding Clayton guilty beyond a reasonable doubt, the jury must have credited this testimony over Clayton's explanation that he merely placed his foot between Freeman's shoulder blade and her neck, and that his actions were necessary to put her under control so that she could be handcuffed. We find this credibility determination well within the province of the jury to make, and it is one that we will not disturb on appeal.

[5]In support of Clayton's false statement conviction, FBI Agent Lavoie testified that in a March 9, 1995 interview, Clayton explicitly stated that he had not struck nor kicked Freeman during her January 13, 1994 arrest, and that in accordance with his hands-off policy, he did not interfere with his officers during the course of an arrest. There was sufficient evidence--noted above in footnote 4--that Clayton's statements to Agent Lavoie were false and material. The jury could rationally conclude that they were made with the specific intent to thwart the federal investigation into his use of unreasonable force. <u>See</u> <u>United States v. Sidhu</u>, 130 F.3d 644, 650 (5th Cir. 1997)(citations omitted).

[6]<u>See</u> <u>Allen v. United States</u>, 164 U.S. 492, 501 (1896).

deliberations.  Clayton argues that the coercive effect of the district court's threat of sequestration is supported by the fact that the jury returned a split verdict against him in only forty-five minutes after receiving the instruction.  Clayton further argues that the Allen charge was prejudicial because no reference was made to the government's burden of proving the charges against him beyond a reasonable doubt.  Clayton therefore contends that the instruction encouraged the jury to accept a level of proof below a reasonable doubt.

B

Because Clayton failed to object to the jury charge at trial, we review the district court's modified Allen charge for plain error, a very difficult standard to satisfy, indeed.  Douglas v. United Serv. Auto. Ass'n., 79 F.3d 1415, 1424 (5th Cir. 1996) (en banc)(citations omitted).  Under the plain error standard, forfeited errors are subject to review only where the errors are "obvious," "clear," or "readily apparent," and they affect the defendant's substantial rights.  Id.; United States v. Calverley, 37 F.3d 160, 162-63 (5th Cir. 1994) (en banc), abrogated in part by, Johnson v. United States, 117 S.Ct. 1544, 1549 (1997).  We will not exercise our discretion to correct the forfeited errors, however, unless they "seriously affect the fairness, integrity, or public reputation of the judicial proceeding."  Calverley, 37 F.3d

7

at 164 (citations omitted).  Applying these standards to the record before us, we do not find that the district court erred, plain or otherwise, in giving the jury the modified <u>Allen</u> charge.

We permit district courts to give modified versions of the <u>Allen</u> charge, so long as the circumstances under which the district court gives the instruction are not coercive, and the content of the charge is not prejudicial.  <u>United States v. Heath</u>, 970 F.2d 1397, 1406 (5th Cir. 1992) (citations omitted).  The district court specifically instructed the jury, in part:

> *[I]f I dismissed you for the night*--it would be very difficult at this time to get accommodations for you. I know several of you live pretty far away, so that might be impractical *but it is not impossible that you could go home for the night and come back tomorrow* if you thought that would help, give you a fresh start tomorrow.

Because nothing in this record plausibly can be read to suggest that the district court coerced the jury to reach its verdict by threatening sequestration, we find no "clear" nor "obvious" error in the charge.  Nor do we find the jury's return of a verdict after only a forty-five minute deliberation, in and of itself, to be proof that its verdict was coerced.  Even under the more stringent abuse of discretion standard, we have approved <u>Allen</u> charges where the jury later deliberated for as short as twenty-five minutes.  <u>United States v. Scruggs</u>, 583 F.2d 238, 241 (5th Cir. 1978) (citations omitted).

8

We are also satisfied that the _Allen_ charge was not prejudicial. The district court, in its final jury charge, admonished the jury at least eleven times that the government had the burden of proving Clayton's guilt beyond a reasonable doubt. The district court also took care in its final charge to define the term "reasonable doubt" and the phrase "proof beyond a reasonable doubt." Given the district court's constant emphasis on the reasonable doubt standard, the exclusion of the standard from the _Allen_ charge could not have prejudiced the jury's understanding of the level of proof necessary to convict Clayton, so as to have affected his substantial rights--the outcome of his trial.

Even if we assumed plain error on the part of the district court, Clayton can not show that the modified _Allen_ charge seriously affected the "fairness, integrity or public reputation" of his trial. In the light of the jury's discriminating verdict, whereby Clayton was acquitted of one of the civil rights charges, we cannot say that the district court pressured the jury into returning guilty verdicts on the remaining counts that it otherwise would not have reached.

In sum, Clayton has shown no plain error with respect to the district court's modified _Allen_ charge.

III

9

A

We now turn to the government's cross-appeal.

The district court concluded that because Freeman had been lawfully restrained (handcuffed) during the course of a legitimate arrest--a restraint that was separate from and not done to facilitate the commission of the offense itself--the two-level victim restraint adjustment, U.S.S.G. § 3A1.3, was not applicable.[7]

In its cross-appeal, the government contends that the district court erred in refusing to apply the victim restraint adjustment to Clayton's offense level. The government argues that the district court's interpretation of U.S.S.G. § 3A1.3 is contrary to the plain language of the guideline, which provides no exception for the "lawful" restraint of the victim. The government further argues that application of the guideline was warranted because Freeman was handcuffed when Clayton kicked her in the head.

---

[7]U.S.S.G. § 3A1.3 (1994) provides that "if a victim was physically restrained in the course of the offense, increase by **2** levels."

The district court's interpretation of the sentencing guidelines is a conclusion of law that we review de novo. United States v. Lister, 53 F.3d 66, 69 (5th Cir. 1995)(citations omitted).

First, we find that the district court's interpretation of U.S.S.G. § 3A1.3, although reasoned and well considered, is not supported by the letter of the guideline. Section 3A1.3 simply provides, with two exceptions that are inapplicable here, a two-level enhancement to the defendant's sentence if the victim was physically restrained in the course of the offense. U.S.S.G. § 3A1.3 ("if a victim was physically restrained in the course of the offense, increase by **2** levels"). Furthermore, we think that an underlying consideration in applying the guideline is that the physical restraint of a victim during an assault is an aggravating factor that intensifies the wilfulness, the inexcusableness and reprehensibleness of the crime and hence increases the culpability of the defendant. It is true, as the district court concluded, that Freeman was not handcuffed to facilitate the commission of the offense against her--Clayton's use of unreasonable force. Nevertheless, Clayton took advantage of the restraint Freeman was under as she lay on the ground, handcuffed. She posed not the slightest threat to him in this condition. She could not defend

herself against an assault, and could not flee from harm. Because Clayton took advantage of this restraint and the particular vulnerability of the victim, it seems to us that both the letter and spirit of the guideline applies to impose an additional sentence on Clayton, beyond the one mandated for his use of unreasonable force. Especially in the light of the facts in this case, we agree with the Fourth Circuit that the lawfulness of the defendant's restraint of the victim at the time the unreasonable or excessive force occurs is not a concern implicated by U.S.S.G. § 3A1.3. See United States v. Evans, 85 F.3d 617 (4th Cir. 1996) (TABLE, TEXT IN WESTLAW, 1996 WL 233056) (rejecting argument U.S.S.G. § 3A1.3 enhancement inapplicable because handcuffing incidental to lawful arrest).

We therefore reverse the district court's ruling, vacate the sentence on count two, and remand for resentencing not inconsistent with this opinion.

C

The government further argues that the district court erred in failing to add a two-level adjustment to Clayton's offense level for obstruction of justice under U.S.S.G. § 3C1.1, on the grounds that Clayton threatened the witnesses prior to the federal investigation of his civil rights offenses.

12

The government argues that at the scene of the January 13, 1994 arrests, Clayton warned several officers that they did not see anything and that if he had to worry about them telling what they saw, he did not need them working for him.  These threats, the government says, deterred officers from coming forward with information to the FBI, thereby obstructing the federal investigation.  The government argues that the plain language of U.S.S.G. § 3C1.1, which speaks of conduct occurring during an investigation,[8] does not actually require the attempt to obstruct justice to occur during the federal investigation.  It is sufficient if Clayton's threats were made for the purpose of obstructing the administration of justice.  Relying on United States v. Barry, 938 F.2d 1327, 1334 n.8 (D.C. Cir. 1991), the government argues that in 1990, the Sentencing Commission amended the commentary to U.S.S.G. § 3C1.1 to extend application of the guideline to conduct made unlawful by the federal obstruction of justice statutes, 18 U.S.C. §§ 1501-1516.  This amendment, the government argues, "implies that the Sentencing Commission did not intend to bar consideration of attempts to obstruct the administration of justice solely because the obstruction occurred

---

[8]U.S.S.G. § 3C1.1 (1994) provides that "if the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by **2** levels."

13

before the commencement of the investigation of the offense." Finally, although the government concedes that Fifth Circuit precedent limits application of U.S.S.G. § 3C1.1 to conduct occurring "during the investigation of the instant offense," see United States v. Luna, 909 F.2d 119, 120 (5th Cir. 1990), United States v. Wilson, 904 F.2d 234, 236 (5th Cir. 1990), the government contends that because the 1990 amendments post-date these cases, the 1990 amendments--not our cases--provide the authoritative interpretation of the guideline.

D

We cannot agree with the government's proposed application of U.S.S.G. § 3C1.1. The plain language of U.S.S.G. § 3C1.1 (1994) provides that "if the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice *during* the investigation . . . of the instant offense, increase the offense level by **2** levels." (Emphasis added.) We do not dispute that the 1990 amendments extended the application of U.S.S.G. § 3C1.1 to conduct prohibited by the federal obstruction of justice statutes. See U.S.S.G. § 3C1.1, comment. (n.3(i))(1994) (noting enhancement applies to conduct prohibited by 18 U.S.C. §§ 1501-1516.)[9] Indeed, we have previously held

---

[9]Application note 3 to U.S.S.G § 3C1.1 (1994) reads as follows:

14

generally that conduct prohibited by 18 U.S.C. § 1512 triggers the application of U.S.S.G. 3C1.1.  See United States v. Greer, 158 F.3d 228, 236-37 (5th Cir. 1998), cert. denied, 119 S.Ct. 1129 (1999); United States v. Graves, 5 F.3d 1546, 1555 (5th Cir. 1993), cert. denied, 511 U.S. 1081 (1994); United States v. Pofahl, 990 F.2d 1456, 1482-83 (5th Cir. 1993), cert. denied, 510 U.S. 996 (1993).  Furthermore, we note specifically that § 1512(b)(3) criminalizes intimidation or threats made with the intent to "hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . . ."  Thus, it would seem that vis-à-vis application note 3(i), which incorporates by reference § 1512(b)(3), the guideline may be applied to conduct occurring before an investigation begins.

Consequently, we acknowledge that there does exist an apparent conflict between the plain language of U.S.S.G. § 3C1.1 and application note 3(i) that must be resolved.  In resolving

The following is a non-exhaustive list of examples of the type of conduct to which this enhancement applies . . .
    (i) conduct prohibited by 18 U.S.C. §§ 1501-
    1516.
This adjustment also applies to any other obstructive conduct in respect to the official investigation, prosecution, or sentencing of the instant offense where there is a separate count of conviction for such conduct. (Emphasis added.)

15

such inconsistencies, we treat commentary to a guideline as akin to a federal agency's interpretation of its own legislative rules, and it is therefore given controlling weight when interpreting and applying a particular guideline. Stinson v. United States, 508 U.S. 36, 44-45 (1993). The Supreme Court has made clear, however, that "if the commentary and the guideline it interprets are inconsistent, in that following one will . . . violat[e] the dictates of the other, the Sentencing Reform Act itself commands compliance with the guideline." Id. at 43 (citing 18 U.S.C. §§ 3553(a)(4), (b)); United States v. Ashburn, 20 F.3d 1336, 1340 (5th Cir. 1994), cert. denied, 514 U.S. 1113 (1995). See also United States v. Oritz-Granados, 12 F.3d 39, 42 (5th Cir. 1994) (citations omitted).

In any event, it seems to us the apparent conflict between U.S.S.G. § 3C1.1 and its 1990 commentary can be reconciled without declaring which must prevail over the other in this instance. In short, the commentary properly interpreted creates no conflict with the guideline. From the language of application note 3(i), see footnote 9, supra, at 15, it does not automatically follow that any and all conduct prohibited by the obstruction statutes requires the application of the guideline. Furthermore, the proper application of the commentary depends upon the limits--or breadth--of authority found in the guideline that the commentary

16

modifies and seeks to clarify. Here, the guideline specifically limits applicable conduct to that which occurs <u>during</u> an investigation; application note 3(i) expressly provides that it is describing only a <u>type</u> of conduct that is subject to the guideline. We therefore conclude that conduct that violates 18 U.S.C. §§ 1501-1516 warrants application of U.S.S.G. 3C1.1 only when such conduct occurs, in the words of the guideline, <u>during</u> an investigation of the defendant's instant offense. We agree with the Tenth Circuit that the plain language of U.S.S.G. § 3C1.1 explicitly contemplates this temporal or nexus requirement. <u>Cf.</u> <u>United States v. Gacnik</u>, 50 F.3d 848, 852-53 (10th Cir. 1995) (conduct undertaken prior to investigation does not fulfill nexus requirement enunciated in U.S.S.G. § 3C1.1) (citations omitted) and <u>United States v. Lister</u>, 53 F.3d 66, 71 (5th Cir. 1995) ("obstruction of justice [adjustment] involves . . . a temporal requirement. . . .").

We also find that our reading of § U.S.S.G. § 3C1.1 is entirely consistent with the Sentencing Commission's most recent clarification of the guideline--a clarification, we add, that takes precedent over prior conflicting judicial interpretations. <u>Stinson</u>, 508 U.S. at 46.[10] In 1998, the Sentencing Commission

[10]We note that our interpretation of U.S.S.G. § 3C1.1 is inconsistent with other circuits who have previously addressed this issue. <u>See</u> <u>United States v. Lallemand</u>, 989 F.2d 936, 938 (7th Cir.

17

amended the commentary to U.S.S.G. 3C1.1 expressly to provide, inter alia, that "[the obstruction] adjustment applies if the defendant's obstructive conduct . . . *occurred during the course of the investigation, prosecution, or sentencing of the defendant's instant offense of conviction . . . .*"[11] U.S.S.G. § 3C1.1, comment. (n.1) (1998). The purpose of the 1998 amendment to application note one was to clarify the point that we have made here, that U.S.S.G. § 3C1.1, indeed, includes a "temporal element." U.S. SENTENCING GUIDELINES MANUAL, Supplement to Appendix C, Amendment 581 (1998).[12] To be sure, we are bound by this amended commentary, Stinson, 508 U.S. at 46, and our authority to give it recognition retroactively is without question. United States v. Anderson, 5 F.3d 795, 802 (5th Cir. 1993), cert. denied, 510 U.S. 1137 (1994) (citations omitted). Furthermore, in the

---

1993) (noting "obstruction of justice can be set in train before investigation begins"); United States v. Barry, 938 F.2d 1327, 1333-34 (D.C. Cir. 1991) (applying U.S.S.G. § 3C1.1 enhancement to conduct occurring prior to investigation or prosecution of offense of conviction).

[11]The 1998 Amendments were effective November 1, 1998.

[12]Amendment 581 provides in pertinent part:
The amendment also clarifies the temporal element of the obstruction guideline (i.e., that the obstructive conduct must occur during the investigation, prosecution, or sentencing of the defendant's offense of conviction).
U.S. SENTENCING GUIDELINES MANUAL, Supplement to Appendix C, Amendment 581 (1998).

light of the 1998 amendments, our earlier cases interpreting U.S.S.G. § 3C1.1 remain binding authority. See Luna, 909 F.2d at 120, Wilson, 904 F.2d at 236.

Thus, in sum, we cannot say that Clayton's conduct justifies application of U.S.S.G. 3C1.1. Although it is clear that Clayton took immediate steps to suppress information concerning the incident by intimidating and threatening the officers at the scene, there is no evidence that Clayton continued these threats once the federal investigation of his case began. We therefore reject the government's argument for application of the obstruction of justice enhancement.[13]

---

[13]In reaching this end we note that the current, modified version of application note 3(i) is found in application note 4(i) of the 1998 obstruction of justice enhancement, U.S.S.G. § 3C1.1 (1998). Application note 4(i) provides in part:

> The following is a non-exhaustive list of examples of the types of conduct to which this adjustment applies. . .
> (i) other conduct prohibited by the obstruction of justice provisions under Title 18, United States Code (e.g., 18 U.S.C. §§ 1510, 1511).
> This adjustment also applies to any other obstructive conduct in respect to the official investigation, prosecution, or sentencing of the instant offense where there is a separate count of conviction for such conduct.

U.S.S.G. § 3C1.1, comment. (n.4) (1998). Without question, application note 4(i) poses the same potential conflict with the plain language of U.S.S.G. § 3C1.1 as does note 3(i). We therefore emphasize that notwithstanding our repeated reference to the 1990 commentary and U.S.S.G. 3C1.1 (1994), our holding today is not limited in application to this dated version of the obstruction of justice enhancement.

19

IV

For the foregoing reasons, each of Clayton's judgments of conviction is affirmed.  We AFFIRM the sentence with respect to count three, we VACATE Clayton's sentence with respect to count two, and REMAND for resentencing on that count in a manner not inconsistent with this opinion.

CONVICTIONS AFFIRMED; SENTENCE VACATED in part; REMANDED for resentencing.

WIENER, Circuit Judge, specially concurring.

I concur in the foregoing opinion, including its analysis of U.S.S.G. § 3C1.1 in sections IIIC and D and its conclusion that the sentence enhancement provisions of § 3C1.1 are inapplicable to obstructive conduct that occurs before the commencement of an investigation. Nevertheless, I write separately to express my consternation with what I perceive to be absurd results produced by that rule, for which perception the instant case could well be Exhibit I: A high ranking county law enforcement officer blatantly commits a federal crime in full view of several subordinate officers (who are presumably at-will employees) and immediately threatens them with loss of employment if they break the unwritten "code of silence" either by reporting the crime or responding truthfully to investigatory questions about the crime; yet because the perpetrator's obstructive conduct at the scene of the crime of necessity predates the commencement of any investigation, his sentence is immune from enhancement for obstruction of justice.

I reluctantly agree that this result is mandated by the Sentencing Commission's 1998 amendment of the commentary to § 3C1.1 — specifically U.S.S.G. § 3C1.1, comment. (n.1) (1998) — and the explanation contained in U.S. Sentencing Guideline Manual, Supplement to Appendix C, Amendment 581 (1998) that "the

21

obstructive conduct must occur during the investigation, prosecution, or sentencing of the defendant's offensive conviction." I just cannot fathom why that should be!

The plain language of § 3C1.1 clearly does not command such a bizarre result under any known rules of interpretation. Whether examined under legal canons of statutory interpretation or plain English rules of syntax, the phrase "during the investigation" should be read to modify the immediately preceding phrase, "administration of justice," not the more remote clause ("the defendant willfully... attempted to obstruct or impede"). When § 3C1.1 is given such a faithful reading, Clayton's warning to his deputies immediately after the completion of his criminal conduct was obviously and specifically intended to obstruct or impede the facet of the administration of justice that would take place during the investigation of his offense (and likely during prosecution and sentencing as well). Indeed, if the subject Guideline were meant to be applied as the Sentencing Commission now instructs through its 1998 amendments, why was it not originally written to read:

> If the defendant, during the investigation, prosecution, or sentencing of the instant offense, willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice, increase the offense level by **2** levels.

22

Such a rearrangement of the various clauses and phrases of this directive would dispel any doubt and justify the inclusion of a "temporal element." As it stands, though, the plain wording of the Guideline should make the enhancement applicable to Clayton. Still, I concede that the 1998 amendments condemn the actual language of § 3C1.1 to the dustbin of careless drafting (or careless reading) by construing that wording to innoculate the obstructer's sentence from being enhanced when his obstructive conduct precedes the commencement of an investigation.

Inasmuch as I am aware of nothing in the legislative history of this Guideline that reflects an intent of Congress to exempt obstructive conduct like Clayton's solely on the basis of timing vis-a-vis the commencement of an investigation, I urge that the Sentencing Commission, or the Congress itself, either fix the problem or explain this aberration for the benefit of sentencing courts and those of us who must review their work on appeal. Please enlighten us all: Is the panel's analysis in the foregoing opinion simply wrong? If not, what policy dictates the Sentencing Commissions's interpretation which, I submit, produces such an anomalous result?