NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0484n.06

Nos. 10-6099 & 10-6106

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*May 08, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | KENTUCKY |
| CLARENCE MCCOY and JOHN MCQUEEN, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

Before: KETHLEDGE and STRANCH, Circuit Judges; GWIN, District Judge.[*]

GWIN, District Judge. In 2008, an FBI investigation uncovered extensive prisoner abuse and a corresponding cover-up scheme at the Lexington-Fayette County Detention Center. A federal grand jury indicted five correctional officers for, among other crimes, conspiracy to violate civil rights under color of law through the use of excessive force. Three of the correctional officers pleaded guilty and gave testimony against the other two, Clarence McCoy and John McQueen. A jury convicted McCoy and McQueen on all counts, and the district court sentenced both McCoy and McQueen to 120 months' imprisonment. With this appeal, McCoy and McQueen challenge their convictions and sentences. We affirm.

---

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

I.

Appellants Clarence McCoy and John McQueen worked as correctional officers at the Lexington-Fayette County Detention Center. McQueen, a Sergeant, and co-defendants Sergeant Anthony Estep and Lieutenant Kristine Lafoe were all third-shift supervisors, working in the Intake unit from midnight to eight a.m. McQueen, Estep, and Lafoe supervised Officer McCoy and co-defendant Corporal Scott Tyree.

At trial, both video and witness testimony established that McCoy and McQueen—each standing about 6'8" tall and weighing approximately 360 pounds—used excessive force against arrestees who neither posed any threat nor exhibited aggression. Co-defendants Estep, Lafoe, and Tyree assisted in, or were witness to, McCoy and McQueen's abuses on arrestees.

For example, the government gave evidence that McQueen slammed arrestee Scott Howe's head into a metal counter multiple times and kicked his feet into a concrete wall. Howe had been verbally abusing McQueen and other officers but presented no physical threat. The assault gave Howe a concussion and exacerbated his preexisting foot injury. Howe now has daily headaches.

McQueen, McCoy, and Tyree restrained Lionell Embry, another arrestee who exhibited no signs of aggression upon his arrival at Intake. McQueen slammed Embry's head into a metal counter, and each of the correctional officers then repeatedly struck Embry's knees. Later that morning, McQueen slammed Embry into a wall, knocking Embry to the floor, where McQueen pressed his weight into Embry's back. McQueen also sprayed pepper spray directly into Embry's eyes and mouth.

Barry Buchignani, too, was verbally belligerent but not physically aggressive at Intake. After McCoy slammed Buchignani's face into a metal counter, Buchignani's chin split open, requiring five stitches and causing jaw pain for weeks.

And when Brian Mulcahy was arrested and taken to Intake for driving on a suspended license and without automobile insurance, McCoy removed Mulcahy from the holding cell, frisked him on the metal counter, pushed him into the Intake area's property room, pepper sprayed him directly in the face, and slammed him face-first into the floor, breaking his nose.

McCoy and McQueen exhibited similar behavior with three more arrestees—Mark Johnson, Beau Powers, and Douglas Pinkston—all of whom made offensive remarks but were not combative and posed no physical threat. McCoy and McQueen slammed their victims into a wall or metal counter, struck them on the knees, and placed them in painful wrist locks.

After abusing each arrestee, the five officers connived to falsify reports and conceal their use of excessive force. Supervisors Lafoe and McQueen instructed Officers McCoy and Tyree to downplay the actual amount of force used against the arrestees. The supervisors instructed the officers to use words such as "placed" or "secured" to describe contact with the victims and to exaggerate the arrestees' conduct, characterizing verbal insults and unprovoking behavior as "actively aggressive" or "actively resistant."

On June 12, 2008, a federal grand jury indicted McCoy, McQueen, Tyree, Estep, and Lafoe for conspiracy to violate civil rights under color of law, in violation of 18 U.S.C. § 241 (count 1). The indictment also charged McQueen with two counts of deprivation of rights under color of law, in violation of 18 U.S.C. § 242 (counts 2 and 5); falsification of records with the intent to obstruct

an investigation, in violation of 18 U.S.C. § 1519 (count 3); and tampering with a witness, in violation of 18 U.S.C. § 1512(b)(3) (count 6). For his part, the indictment charged McCoy with two additional counts: aiding and abetting the deprivation of rights under color of law, in violation of 18 U.S.C. §§ 2 and 242 (count 7); and aiding and abetting the falsification of records with the intent to obstruct an investigation, in violation of 18 U.S.C. §§ 2 and 1519 (count 8).

By mid-May 2009, co-defendants Estep, Tyree, and Lafoe reached plea agreements with the government and entered guilty pleas. Both McCoy and McQueen rejected the government's proposed plea agreements, and McCoy rejected a deal that would have required him to testify against McQueen.

Back in 2008, McCoy and McQueen had jointly hired law partners Jason Rapp and David Franklin as their defense counsel and had waived the conflict associated with multiple representation. On June 18, 2009, the government moved under Federal Rule of Criminal Procedure 44(c) for inquiry into McCoy and McQueen's joint representation and to disqualify attorneys Rapp and Franklin. After a hearing, the district court found that Rapp and Franklin's joint representation of McCoy and McQueen created an actual conflict of interest (based on the failed plea negotiations) and presented a serious potential conflict at trial. Over McCoy's and McQueen's objections, the district court disqualified Rapp and Franklin and later appointed separate public counsel to represent McCoy and McQueen.

The case proceeded to trial, and on May 13, 2010, a jury convicted McCoy and McQueen on all counts. On August 31, 2010, the district court imposed identical sentences on McCoy[1] and McQueen:[2] 120 months' imprisonment on all counts, to run concurrently, followed by two years' supervised release.

With this appeal, McCoy and McQueen say the trial court committed four errors: (1) the district court wrongly disqualified their privately retained counsel; (2) the district court improperly calculated their base offense levels; (3) the district court improperly applied a two-level offense-level increase for the use of physical restraint; and (4) the district court unreasonably sentenced them to 120 months' imprisonment. We disagree.

II.

McCoy and McQueen claim that their convictions must be overturned because the district court violated their Sixth Amendment rights to counsel when it disqualified their chosen attorneys, law partners Jason Rapp and David Franklin. Because a district court has "wide latitude" when it makes attorney-disqualification decisions, a district court's disqualification of counsel will be

---

[1]McCoy was convicted on count 1 (conspiracy to deprive rights under color of law, in violation of 18 U.S.C. § 241); count 7 (aiding and abetting the deprivation of rights under color of law, in violation of 18 U.S.C. §§ 242 and 2); and count 8 (aiding and abetting the falsification of records with the intent to obstruct an investigation, in violation of 18 U.S.C. §§ 2 and 1519).

[2]McQueen was convicted on count 1 (conspiracy to deprive rights under color of law, in violation of 18 U.S.C. § 241); counts 2 and 5 (deprivation of rights under color of law, in violation of 18 U.S.C. § 242); count 3 (falsifying records with the intent to obstruct an investigation, in violation of 18 U.S.C. § 1519); and count 6 (tampering with a witness, in violation of 18 U.S.C. § 1512(b)(3)).

"upheld unless 'arbitrary' or 'without adequate reasons.'" *United States v. Swafford*, 512 F.3d 833, 839 (6th Cir. 2008) (citing *United States v. Mays*, 69 F.3d 116, 121 (6th Cir. 1995)).

The Sixth Amendment guarantees a criminally accused "the Assistance of Counsel for his defence," but the overriding "purpose of providing assistance of counsel . . . is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988). The trial court "must recognize a presumption in favor of [a defendant's] counsel of choice," *id.* at 164, but "a court confronted with and alerted to possible conflicts of interest must take adequate steps to ascertain whether the conflicts warrant separate counsel," *id.* at 160.

In addition, Federal Rule of Criminal Procedure 44 mandates an inquiry into potential conflicts in joint criminal-defendant representation and requires that "[u]nless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel." Fed. R. Crim. P. 44(c). Given this responsibility, the presumption in favor of the defendant's chosen counsel "may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential of conflict." *Wheat*, 486 U.S. at 164.

In this case, the government—after failing to reach plea agreements with McCoy and McQueen—challenged McCoy's and McQueen's joint representation. At the Rule 44(c) hearing, the district court counseled the defendants on their waivers of multiple representation, made extensive findings, and found actual and potential conflicts of interest. The district court first discussed the actual conflict of interest that resulted when McCoy was offered a plea agreement that

required him to testify against McQueen: "So here, what the Court finds is that there is an actual

conflict of interest regarding the plea negotiations. It's difficult to imagine any situation in which

a lawyer could be more torn in terms of advising a client."

> Similarly, the district court foresaw potential conflicts of interest at trial.
>
> For example, the decision as to whether a defendant should even put on a defense; if so, whether either or both of the defendants should testify, and then determining a strategy in the examination of either or both defendants and how to handle what the witnesses might say after they had been cross-examined.

The district court concluded that, despite McCoy and McQueen's waivers of the conflict, "the

potential for conflict at trial here is so great that it does, under these circumstances, require the

disqualification of counsel."

We conclude that the district court both correctly recognized the actual conflict in the joint

representation of McCoy and McQueen (the negotiation of a plea agreement in which the former's

confession would condemn the latter) and correctly anticipated the serious potential for conflict at

trial (the supervisor and subordinate co-conspirators). Moreover, the district court properly balanced

two Sixth Amendment rights: "(1) the qualified right to be represented by counsel of one's choice,

and (2) the right to a defense conducted by an attorney who is free of conflicts of interest," *Wheat*,

486 U.S. at 157, and took appropriate measures to ensure the latter would not cede to the former.[3]

Accordingly, McCoy and McQueen did not suffer a Sixth Amendment violation, and the district

---

[3]Contrary to McCoy and McQueen's argument, the fact that neither McCoy nor McQueen accepted a plea agreement after the district court disqualified attorneys Rapp and Franklin adds nothing to our analysis. The benefit of our hindsight does not call the district court's decision into doubt, much less indicate that it was arbitrary. *See Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993).

court did not abuse its discretion when it disqualified their chosen counsel.

III.

McCoy and McQueen also challenge their sentences, and we review under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). We first ensure that the district court "committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ." *Id.* Next, we consider whether the sentence is substantively reasonable. *Id.* "In reviewing the district court's calculation of the Guidelines, we still review the district court's factual findings for clear error and its legal conclusions *de novo*." *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007).

McCoy and McQueen argue that the district court made two procedural sentencing errors: (1) it used the aggravated-assault base offense level, rather than the minor assault base offense level; and (2) it applied a two-level offense-level increase for physical restraint under § 3A1.3. Moreover, McCoy and McQueen say, their sentences are substantively unreasonable. We address, and reject, their arguments in turn.

A.

United States Sentencing Guidelines Manual (U.S.S.G. or Guidelines) § 2H1.1 sets the base offense level for violations of 18 U.S.C. §§ 241 and 242, and directs the sentencing court to "Apply

-8-

the Greatest" of four alternative base offense levels.[4]  First among those alternatives is "the offense level from the offense guideline applicable to any underlying offense."[5]  U.S.S.G § 2H1.1(a)(1). Application note 1 to § 2H1.1 gives further clarification:  "'Offense guideline applicable to any underlying offense' means the offense guideline applicable to any conduct established by the offense of conviction that constitutes an offense under federal, state, or local law . . . ."

McCoy and McQueen correctly argue that their offense of conviction established minor, but not aggravated, assault.  They were charged with, and convicted of, "physical[] assault . . . result[ing] in bodily injury."  Aggravated assault, however, requires more: "(A) a dangerous weapon with intent to cause bodily injury . . . with that weapon; (B) serious bodily injury; or (C) an intent to commit another felony."  U.S.S.G. § 2A2.2 cmt. n.1.  Accordingly, the offense guideline applicable to their underlying offense is U.S.S.G. § 2A2.3, minor assault.[6]  Thus, McCoy and McQueen argue, the district court erred in using the aggravated-assault base offense level.  But their analysis prematurely ends.

For the purpose of determining the proper offense level in § 2H1.1(a)(1), the district court was required to calculate the "offense level" for the underlying offense.  Calculation of the offense level, however, does not end with the court's determination of the offense-guideline section that

---

[4]All Guidelines references are to the November 1, 2009, edition.

[5]The other alternative base offense levels are 12, 10, or 6, based on the circumstances of the offense.

[6]Minor assault, as defined in the Guidelines, is "a misdemeanor assault, or a felonious assault not covered by §2A2.2 (Aggravated Assault)."  U.S.S.G. § 2A2.3 cmt. n.1.

applies to the crime. Rather, an offense level includes, among other things (*see* U.S.S.G. § 1B1.1), consideration of "all acts and omissions committed . . . by the defendant," U.S.S.G. § 1B1.3(a)(1)(A), to determine "any appropriate specific offense characteristics, cross references, and special instructions," U.S.S.G. § 1B1.1(b).

Here, Guidelines § 2A2.3(c)(1)'s cross-reference applies: "If the *conduct* constituted aggravated assault, apply §2A2.2 (Aggravated Assault)." U.S.S.G. § 2A2.3(c) (emphasis added). The district court found that McCoy and McQueen's conduct was aggravated assault, *see* U.S.S.G. § 2A2.2, Application Note 1, and McCoy and McQueen do not challenge that factual finding. Therefore, the district court was required to cross-reference to Guidelines § 2A2.2, and to continue its offense-level calculation from that point. Because the district court correctly used the aggravated-assault Guidelines section, McCoy and McQueen's argument that their base offense level does not match the jury instructions fails.

B.

McCoy and McQueen next assert that the district court erred when it applied a two-level offense-level increase for physical restraint. They argue that restraint is included in the "under color of law" enhancement in Guidelines § 2H1.1(b)(1)(B) because the "victims were 'physically restrained' by the fact of their pretrial detention," and that the two-level increase was double counting.

Guidelines § 2H1.1(b)(1)(B) tells the sentencing court to increase the offense level by six levels if the offense was committed under color of law. Additionally, Guidelines § 3A1.3 requires a two-level increase "[i]f a victim was physically restrained in the course of the offense." Section

3A1.3 does not apply, however, when physical restraint is already an element of the offense—that is, when it would double-count the physical restraint. U.S.S.G. § 3A1.3 cmt. n.2. "Under color of law" and "physical restraint," however, have different meanings and distinct applications.

"Under color of law" generally means that a government agent acts under official authority. *See, e.g.*, *United States v. Classic*, 313 U.S. 299, 326 (1941) ("Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law."). On the other hand, physical restraint is defined as "forcible restraint of the victim such as by being tied, bound, or locked up." U.S.S.G. § 1B1.1 cmt. n.1(K). For example, in *Clayton*, the Fifth Circuit concluded that § 3A1.3's two-level enhancement applied where a police officer "took advantage of [the arrestee's] restraint and the particular vulnerability of the victim," because that physical restraint "intensifie[d] the wilfulness, the inexcusableness and reprehensibleness of the crime and hence increase[d] the culpability of the defendant." *United States v. Clayton*, 172 F.3d 347, 353 (5th Cir. 1999); *see also United States v. Carson*, 560 F.3d 566, 588 (6th Cir. 2009) (adopting the *Clayton* court's reasoning).[7]

Thus, the harm to be punished, and deterred, by the "under color of law" enhancement is the misuse of power by one with governmental authority, while the physical restraint enhancement concerns itself with the vulnerability of the victim and the wilfulness and culpability of the offender. An offense committed under color of law does not necessarily include physical restraint, and in this

---

[7]Contrary to McCoy and McQueen's suggestion, actions taken "under color of law" do not invariably go hand-in-hand with physical restraint. *See, e.g.*, Jens Erik Gould, *A Sleepy Campus in Crisis: Pepper Spray at UC Davis Sparks Online Uproar, Calls for a Chancellor's Resignation*, Time (November 21, 2011), http://www.time.com/time/nation/article/0,8599,2099919,00.html.

case, both enhancements were applicable to the same conduct without double counting.

Accordingly, the district court properly applied both enhancements, and we find no procedural error.

IV.

Finally, McCoy and McQueen argue that, in light of the sentences imposed on their co-defendants Lafoe and Tyree (12 and 18 months' imprisonment), their sentences to 120 months' imprisonment are unreasonable.[8]

A "sentence may be substantively unreasonable if the district court chooses the sentence arbitrarily, grounds the sentence on impermissible factors, or unreasonably weighs a pertinent factor." *United States v. Brooks*, 628 F.3d 791, 796 (6th Cir. 2011). In addition, a sentencing court is required to consider "unwarranted sentence disparities," 18 U.S.C. § 3553(a)(6), but that statute "is not concerned with disparities between one individual's sentence and another individual's sentence, despite the fact that the two are co-defendants," *United States v. Presley*, 547 F.3d 625, 631 (6th Cir. 2008). To the contrary, consideration of co-defendant sentencing disparity is purely discretionary. *See United States v. Simmons*, 501 F.3d 620, 623-24 (6th Cir. 2007).

And while it is true that McCoy and McQueen's sentences are much greater than their co-defendants', when co-defendants are not similarly situated—and here they are not—it is reasonable for a district court to impose different sentences. *See Presley*, 547 F.3d at 63. Co-defendants Lafoe

---

[8]To the extent that McCoy and McQueen make an argument that the district court committed procedural error by failing to make specific findings on the co-defendants' sentencing disparities, we reject it. As noted below, the consideration of co-defendant sentence disparity is purely discretionary. And, as McCoy and McQueen acknowledge, the district court heard argument on the co-defendants' sentencing disparities and specifically questioned whether McCoy and McQueen were being "punished disproportionately for exercising their constitutional right to trial."

and Tyree pleaded guilty and cooperated with the prosecution. McCoy and McQueen did not.[9]

More importantly, the statutory-maximum sentence of 10 years' imprisonment is not substantively unreasonable for McCoy and McQueen's egregious conduct: flagrant abuse of defenseless, restrained victims by persons entrusted with positions of authority. The district court appropriately considered and applied the pertinent factors and gave a reasoned basis for its sentencing determination. Accordingly, McCoy and McQueen's sentences are substantively reasonable.

V.

For the reasons stated, Clarence McCoy and John McQueen's convictions and sentences are AFFIRMED.

---

[9]We disagree with McCoy and McQueen's theory that any defendant who goes to trial is necessarily taking a five-level offense-level increase. First, the two-level obstruction of justice enhancement cautions against punishing a defendant for exercising his constitutional rights. *See* U.S.S.G. § 3C1.1 cmt. n.2. Second, a defendant who pleads guilty does not automatically receive a three-level acceptance-of-responsibility reduction. *See generally* U.S.S.G. § 3E1.1. And the Supreme Court has "squarely held that [the government] may encourage a guilty plea by offering substantial benefits in return for the plea." *Corbitt v. New Jersey*, 439 U.S. 212, 219 (1978); *see also United States v. Davis*, 170 F.3d 617, 628 (6th Cir. 1999).