# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1817

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Minnesota. |
| Douglas Lumir Stolba, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 17, 2003

Filed: February 10, 2004 **(Corrected 2/23/04)**

_____

Before MORRIS SHEPPARD ARNOLD, HEANEY, and RILEY, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Douglas Stolba, an investment advisor who embezzled his clients' funds and provided them with fraudulent account statements over a period of twenty-six years, pleaded guilty to two counts of mail fraud in violation of 18 U.S.C. § 1341. At sentencing, the district court imposed an upward adjustment pursuant to § 3C1.1 of the United States Sentencing Guidelines, from which Mr. Stolba now appeals. Because Mr. Stolba's obstructive conduct undisputedly occurred before any official investigation of his mail fraud offenses, we vacate the sentence and remand for resentencing.

## I.

We review the district court's factual findings relating to the adjustment for clear error, *Brown v. United States*, 169 F.3d 531, 532 (8th Cir. 1999), but we review the district court's legal determination that the relevant conduct is within the scope of § 3C.1.1 *de novo*, *United States v. Hankins*, 931 F.2d 1256, 1263 (8th Cir. 1991), *cert. denied*, 502 U.S. 886 (1991).

Since the dispute over the applicability of § 3C1.1 to Mr. Stolba centers upon the timing of the obstructive conduct, we rehearse the relevant events in some detail. In February and March, 2002, Kathleen Nelson, who had invested funds with Mr. Stolba, met with Mike Cassidy, a financial planner, to discuss her investments. Mr. Cassidy and Ms. Nelson became suspicious after looking at information that Mr. Stolba had provided to Ms. Nelson about her accounts, and they contacted Mr. Stolba on April 4, demanding that he provide certain documentation by the close of business on Friday, April 5. They informed Mr. Stolba that if he failed to provide the requested documentation, they intended to send a letter complaining about his conduct to the appropriate authorities. Mr. Stolba did not provide them with the documentation, and on Saturday, April 6, he called his office manager, Colleen Morgan, at home and said he was in "big trouble." He asked her to explain to him how to delete certain investment statements relating to his fraudulent conduct from the computer system at his business. She was unable to explain the procedure over the telephone and Mr. Stolba instructed her to delete the files when she returned to the office on Monday, April 8, which she did. (The deleted records were later retrieved from the computer and provided to the FBI.) Ms. Nelson sent a letter to the Minnesota Department of Commerce (MNDOC) on April 8, requesting an investigation of Mr. Stolba's conduct. The MNDOC opened an investigation on April 29, and it referred the matter to the FBI on May 10, at which time the FBI's investigation commenced. Mr. Stolba entered his guilty plea on November 27.

At the sentencing hearing, the district court found that when Mr. Stolba instructed Ms. Morgan to delete the files, he "knew that the investigation had either commenced or was about to commence," and it assumed that the investigation had not actually commenced at this time. According to the district court, Mr. Stolba "knew he was caught, he knew that another financial adviser was suspicious and he formed the opinion, and it turned out to be somewhat erroneous, that if he could get these records destroyed that it might minimize his exposure, incrimination." The district court concluded that this was "the situation that the guidelines intended to apply to," and it imposed a two-level upward adjustment for obstruction of justice. The district court calculated a total offense level of 29, taking into account the obstruction of justice adjustment, and it imposed a sentence of 108 months, which was the uppermost sentence available under the range established by the sentencing guidelines.

## II.

The district court applied § 3C1.1 of the sentencing guidelines to Mr. Stolba, which requires a two-level adjustment if, as relevant, "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1(A).

The parties direct our attention to language in the Sentencing Commission's commentary to § 3C1.1. What is now application note 4 (originally application note 3) was added to the commentary in 1990, *see* U.S.S.G. app. C vol. I, amend. 347. The note provides "a non-exhaustive list of examples of the types of conduct" that will support an adjustment, which includes "destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding (*e.g.,* shredding a document or destroying ledgers upon learning that an official investigation has commenced or is about to commence), or attempting to do so." U.S.S.G. § 3C1.1 comment. (n.4(d)). A more recent

-3-

amendment to the commentary is also pertinent. Application note 1, which was added in 1998, *see* U.S.S.G. app. C vol. II, amend. 581, expressly provides, *inter alia*, that "[the obstruction] adjustment applies if the defendant's obstructive conduct ... occurred during the course of the investigation, prosecution, or sentencing of the defendant's instant offense of conviction." U.S.S.G. § 3C1.1 comment. (n.1). This amendment "clarifies the temporal element of the obstruction guideline (*i.e.,* that the obstructive conduct must occur during the investigation, prosecution, or sentencing of the defendant's offense of conviction)." U.S.S.G. app. C vol. II, amend. 581, reason for amendment.

We conclude that an obstruction adjustment was unavailable in the present circumstances because no official investigation relating to Mr. Stolba's offenses was underway when he directed Ms. Morgan to delete the computer files. Section 3C1.1 unambiguously requires obstructive conduct to have occurred "during" investigation, prosecution, or sentencing, and at the time that Mr. Stolba directed Ms. Morgan to delete the files, no governmental entity had started investigating or even become aware of Mr. Stolba's fraudulent conduct.

We are faced with the issue of whether there is a conflict between the language of § 3C1.1 and application note 4(d) in the commentary to that guideline. "Commentary which functions to 'interpret [a] guideline or explain how it is to be applied' controls," *Stinson v. United States*, 508 U.S. 36, 42 (1993) (quoting U.S.S.G. § 1B1.7), but if "commentary and the guideline it interprets are inconsistent in that following one will result in violating the dictates of the other, the Sentencing Reform Act itself commands compliance with the guideline," *id.* at 43 (citing 18 U.S.C. § 3553(a)(4), (b)).

In § 3C1.1, the phrase "during the course of the investigation, prosecution, or sentencing of the instant offense of conviction" modifies the clause "the defendant

willfully ... attempted to obstruct or impede." The guideline provision is thus expressly limited by its language to obstructive conduct that occurs "during the course of the investigation, prosecution, or sentencing" and is inapplicable to obstructive conduct that occurs at any other time. The temporal requirement for obstructive conduct that qualifies for the adjustment is made crystal clear in application note 1. *See United States v. Clayton*, 172 F.3d 347, 356-57 (5th Cir. 1999) (Wiener, J., concurring). The plain language of the guideline would thus preclude its application to a person who attempted to shred a document or destroy ledgers when an official investigation had not yet commenced, even if that person had learned that an official investigation was about to commence and his conduct otherwise conformed to the language in application note 4(d).

The Fifth Circuit, in *Clayton*, 172 F.3d at 353-56, was faced with a situation similar to the present one, because an application note appeared at first blush to conflict with the plain language of a guideline. The court managed to reconcile the apparent conflict by narrowly interpreting the language of the application note. *See id.* at 355-56. We believe that it is possible to do the same thing here. Because application note 4 purports only to provide a "list of examples of the types of conduct to which this adjustment applies," it does not automatically follow that any and all conduct described in the note requires the application of the guideline. Furthermore, "the proper application of the commentary depends upon the limits – or breadth – of authority found in the guideline that the commentary modifies and seeks to clarify." *Clayton*, 172 F.3d at 355. Here, the guideline specifically limits applicable conduct to conduct that occurs during the course of an investigation, prosecution, or sentencing; application note 4(d) expressly provides that it is describing only a type of conduct that is subject to the guideline. *See id.* We therefore conclude that the example at issue in the application note ("shredding a document or destroying ledgers upon learning that an official investigation ... is about to commence") would warrant application of the guideline only when a person had learned that an official investigation was about to commence but did not commit the obstructive conduct

until after the investigation had actually commenced (whether or not he knew that it had).  Obstructive conduct otherwise conforming to the example but occurring prior to an investigation's commencement does not warrant application of the guideline.

We are aware that other courts have disagreed with the conclusion that we reach here, holding that the adjustment may apply even when the relevant obstructive conduct takes place before the beginning of an investigation.  *See*, *e.g.*, *United States v. Mills*, 194 F.3d 1108, 1114-15 (10th Cir. 1999); *United States v. Barry*, 938 F.2d 1327, 1335 (D.C. Cir. 1991).  We respectfully disagree with these cases for the reasons already given.  We also realize that we have recently stated in dicta that "[w]hile § 3C1.1 uses the word 'during,' it also applies to obstructive conduct that occurs before an official investigation has commenced." *United States v. Orchard*, 332 F.3d 1133, 1138 n.3 (8th Cir. 2003). *But see United States v. Oppedahl*, 998 F.2d 584, 585 n.2 (8th Cir. 1993).  Upon reflection, however, we believe that the temporal limitations in § 3C1.1 require a holding that Mr. Stolba's obstructive conduct falls beyond the reach of that guideline.

## III.

We therefore vacate the sentence of the district court and remand the case for resentencing.

_____