IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-40549
_____


UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

v.


L.C. LISTER, JR.,

                              Defendant-Appellant.


_____

Appeal from the United States District Court
for the Eastern District of Texas
_____

(May 5, 1995)

Before KING and JONES, Circuit Judges, and LAKE, District Judge.[*]

PER CURIAM:

     L.C. Lister, Jr. appeals from the sentencing determination of
the district court, arguing that an obstruction of justice
enhancement was improperly applied and that an acceptance of
responsibility deduction was improperly denied.  We affirm the
sentence imposed by the district court.

_____

     [*] District Judge of the Southern District of Texas, sitting
by designation.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In January of 1991, an investigation began into Lister's involvement in the distribution of "crack" cocaine in the East Texas area. Two cooperating individuals were employed to engage in various crack purchases from Lister. On July 9, 1991, Lister was charged in a five-count indictment with conspiracy to possess cocaine base with intent to distribute and with distribution of cocaine base. On October 10, 1991, after the government had rested its case, Lister pled guilty to count two of the indictment involving the distribution of cocaine base.

The presentence report ("PSR") recommended a two-level increase in Lister's offense level for obstruction of justice, and it recommended against awarding a two-level decrease in Lister's offense level for acceptance of responsibility. The district court overruled Lister's objections to the PSR and adopted the findings in the report. On January 8, 1992, Lister was sentenced to 151 months imprisonment followed by a four-year term of supervised relief.

The sentencing enhancement for obstruction of justice was based upon a May 20, 1991 sale of crack cocaine to a cooperating individual named Katy Demond. While in Demond's automobile, Demond gave Lister $2,100 in exchange for the crack cocaine. Lister indicated that Demond was $100 short on the payment, and he began looking around Demond's vehicle. He asked to see a picture identification of Demond, and he stated his belief that Demond might be a police officer. According to the PSR, Lister stated

that if he got "busted," he would only have to make one telephone call to have Demond "mess[ed] up." Lister further stated:

> I'm just saying . . . you know what I'm talking about . . . . these men will kill . . . they don't give a damn who it is . . . something would happen. It's going to be bad luck I'm telling you. . . . They don't give a damn about kids or nothing . . . They come . . . They blow your fucking house up. I'm telling you right now . . . You can tell me you can go snitch on everybody else but don't snitch on me . . . .

Lister then began searching Demond's automobile for possible hidden microphones, but he eventually sold Demond two ounces of crack. The transaction was monitored and audiotaped by case agents.

Lister does not challenge his underlying conviction; instead, he only appeals from his sentencing determination. According to Lister, he did not "willfully" obstruct justice because he "did not know that he was under investigation by any authorities or that these individuals were potential witnesses against him." Moreover, Lister claims that the district court erroneously denied him a sentence reduction for acceptance of responsibility. We disagree with Lister's contentions, but before discussing his claims, we address a threshold issue involving our jurisdiction to hear this appeal.

## II.  ANALYSIS AND DISCUSSION

### A.  Jurisdiction

After his conviction and sentencing, Lister did not immediately appeal. He filed a motion pursuant to 28 U.S.C. § 2255 alleging that he received ineffective assistance of counsel because his attorney failed to appeal his sentence. The magistrate judge recommended 1) that the motion be dismissed without prejudice; 2)

3

that Lister's judgment of conviction be reinstated on the docket of the district court; and 3) that Lister be given ten days from receipt of the final judgment to file his notice of appeal. The district court adopted the report and recommendation of the magistrate judge and ordered the reinstatement of Lister's judgment of conviction. The court also advised Lister that he could file his appeal within ten days of receiving the order.

The district court's order of reinstatement was entered on May 13, 1994. Return receipts in the record indicate that the order was received by Lister's attorney, C. Bruce Abraham, on May 14, 1994, and by Lister himself on May 17, 1994. On June 8, 1994, Abraham filed a notice of appeal in which he represented that he received the order on May 31, 1994. On June 17, 1994, Lister also filed a notice of appeal, together with a motion for appointment of appellate counsel.[1] On July 7, 1994, the district court granted Lister's motion and appointed the Federal Public Defender to represent Lister on appeal.

Because the first notice of appeal was apparently filed more than ten days after receipt of the order, our jurisdiction to hear this appeal is in question. We have long held that, if necessary, an examination of the basis of our jurisdiction must occur on our own motion. See Mosley v. Cozby, 813 F.2d 659, 660 (5th Cir. 1987). Lister's ten-day period for filing his appeal elapsed on May 24, 1994. Under Federal Rule of Appellate Procedure 4(b),

---

[1] Lister requested appellate counsel because Abraham had recently accepted employment as an Assistant Attorney General for the State of Texas.

4

however, the district court may extend the time for filing a notice of appeal for a period of up to thirty days if "excusable neglect" is found. In <u>United States v. Quimby</u>, 636 F.2d 86, 89 (5th Cir. Unit A Feb. 1981), we concluded that the district court's ruling on the motion to appoint counsel and to allow appeal in forma pauperis constituted such a finding of "excusable neglect" when the notice of appeal was untimely. Following <u>Quimby</u>, therefore, the district court's ruling on Lister's motion for appointment of appellate counsel was tantamount to an "excusable neglect" finding, and as such, we have jurisdiction over Lister's appeal.

## B. Obstruction of Justice

Lister objected to the upward adjustment in his sentence for obstruction of justice, but the district court overruled his objection and adopted the PSR in its entirety. On appeal, Lister's primary contention is that he did not "willfully" obstruct justice because he was unaware that he was the subject of an investigation and that Katy Demond was a witness for the government. According to the PSR, before threatening Demond, Lister "stated that he believed that [Demond] might be a police officer," and the PSR also noted that "[t]he defendant made specific threats to the confidential informant when he suspected that [she] might be an undercover officer." The PSR implied, however, that knowledge or awareness of an investigation was irrelevant to the obstruction of justice enhancement, as the PSR stated that the relevant sentencing guideline "does not state that the defendant must have prior

5

knowledge that an official investigation has been undertaken."[2] As mentioned, the district court adopted the findings of the PSR in their entirety.

The sentencing court's interpretations of the guidelines, being conclusions of law, are reviewed de novo. United States v. McCaskey, 9 F.3d 368, 372 (5th Cir. 1993), cert. denied, 114 S. Ct. 1565 (1994). We conclude that a defendant's awareness of the commencement of an investigation is relevant and necessary for the obstruction of justice enhancement. As we will explain, however, the district court made the required findings in this case, and as such, the guidelines were properly applied.

The obstruction of justice enhancement, U.S.S.G. § 3C1.1, states that "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." One of the examples of the types of conduct covered by this enhancement is "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." Id. Courts have defined "willful" to require the defendant to act "deliberately and with the intent to hinder justice," United States v. Teta, 918 F.2d 1329, 1333 (7th

---

[2] Similarly, the government contends that the obstruction of justice enhancement "does not state that the defendant must have prior knowledge that an official investigation has been undertaken," and it further asserts that "it is of no consequence that Defendant was not aware an official investigation of his drug activities was under way."

6

Cir. 1990); see United States v. Rivera, 971 F.2d 876, 894 (2d Cir. 1992) (noting that the defendant must have "consciously act[ed] with the *purpose* of obstructing justice" (internal quotation omitted)), but the interpretive question before us is whether the term "willfully" contemplates "an understanding that an investigation of a defendant's conduct has probably begun, or simply means that the defendant was generally knowledgeable as to the likely effect of a threat on the person to whom the conduct is directed." United States v. Oppedahl, 998 F.2d 584, 585 (8th Cir. 1993).

The term "willful," unfortunately, is a term with "no fixed meaning," Smith v. Wade, 461 U.S. 30, 63 n.3 (1983) (Rehnquist, J., dissenting), and the Supreme Court has counseled that the term's construction is often "influenced by its context." Spies v. United States, 317 U.S. 492, 497 (1943). To understand the context in which we base our decision today, an examination of the pertinent case law is necessary.

In United States v. Luna, 909 F.2d 119 (5th Cir. 1990), the appellant committed an assault with a gun and concealed the gun before the crime was reported and before an investigation had commenced. See id. at 120. The government conceded that an investigation of the offense did not begin until several hours after the gun was concealed. The district court found that an obstruction of justice enhancement was appropriate "because the concealment of the weapon constituted obstruction of justice." Id. We reversed, emphasizing the temporal language of the enhancement:

7

"during the investigation or prosecution of the instant offense."[3]
As we explained:

> In the instant case *it is undisputed that no investigation had begun when appellant concealed the gun*. It is equally clear that appellant concealed the weapon so that his crime would go unpunished.
> . . .
> The government relies on three cases[,] all of which are factually inapposite *since in each of those cases the investigation was already underway at the time the defendants attempted to conceal or destroy the evidence*.

Id. (emphasis added) (footnote omitted). From this language, it is clear that Luna established a temporal requirement for the obstruction of justice enhancement, but the opinion did not address whether a defendant's awareness of the investigation is also required before the enhancement can be imposed.

In United States v. Wilson, 904 F.2d 234 (5th Cir. 1990), however, we did hint that a defendant's awareness may be necessary for imposition of the enhancement. Wilson used an alias and gave a package containing firearms to a Federal Express agent in Dallas for delivery to New York. See id. at 235. Wilson did not tell the Federal Express agent that the package contained firearms, nor did Wilson know that agents of the Bureau of Alcohol, Tobacco, and Firearms were watching nearby. See id. At sentencing, the district court found that an obstruction of justice enhancement was warranted because "Wilson's use of an alias impeded the investigation of the offense." Id.

---

[3]    The slight difference in the language of the enhancement is due to the fact that an earlier version of the Sentencing Guidelines was at issue in Luna.

We reversed this finding on appeal, and we intimated that a defendant cannot obstruct justice (in the context of the sentencing enhancement) without an awareness that an investigation into his behavior has commenced. As we observed:

> There is simply no evidence that Wilson wil[l]fully impeded or obstructed the administration of justice, or attempted to do either, *during the investigation or prosecution* of his offense. Wilson did not misrepresent his identity to law enforcement officers; he misrepresented it to Federal Express. *At that time, Wilson was unaware that any investigation was taking place and prosecution had not yet begun*. His intent clearly was not to impede the investigation or prosecution of his offense. His intent was to disguise himself in such a way so that his crime would go unpunished. At that he was unsuccessful, and he deserves to be punished for his underlying offense. An increase in his offense level is, however, unwarranted.

Id. (second emphasis added). Wilson alone, however, cannot stand for the proposition that a defendant's awareness of the investigation is *independently* necessary before the enhancement can be imposed. After all, the above-quoted language suggests that the temporal requirement was also not met in Wilson, and we did not explain the extent to which this temporal problem led to our conclusion.[4]

The Eighth Circuit, however, did address the independent significance of this awareness issue in a case strikingly similar to the one now before us. In Oppedahl, the defendant was an LSD

---

[4]    Indeed, in the subsequent Luna decision, we stated that our inquiry was guided by Wilson, and we focused on the temporal language in Wilson that there was "simply no evidence that Wilson willfully impeded or obstructed the administration of justice or attempted to do so either, *during the investigation or prosecution* of his offense." Luna, 909 F.2d at 120 (quoting Wilson, 904 F.2d at 235).

9

dealer, and during the course of dealing with a customer, the defendant remarked "that he would kill the customer if he ever `narked' on his supplier." 998 F.2d at 585. At the time, the defendant was unaware that his conversation had occurred when he and his customer were under suspicion and when an investigation into their conduct had already begun. See id.

The Probation Officer recommended an obstruction of justice enhancement, but the district court rejected the suggestion. See id. The court found that the customer was intimidated by the threat, but it held that there was no "willful" obstruction of justice when the defendant was unaware of the investigation. See id. On appeal, the Eighth Circuit affirmed, and it provided the following insightful analysis:

> It would be anomalous for the Sentencing Commission to direct that sentences be enhanced for threatening conduct during the course of a totally unknown investigation, while providing that similarly culpable conduct would not result in an enhancement if there were no investigation. Deterrence would not be served by such a rule, absent some awareness of the investigation. Culpability is identical, by definition. **We believe that the term "willfully" should be reserved for the more serious case, where misconduct occurs with knowledge of an investigation, or at least with a correct belief that an investigation is probably underway**. Thus, the deterring effect of the Guideline is advanced, at least in theory.

Id. at 586 (emphasis added); see also United States v. Perry, 991 F.2d 304, 312 (6th Cir. 1993) (denying an obstruction of justice enhancement for sending alleged robbery proceeds to a girlfriend in another state because "[a]t the time [the defendant] sent the money, *he had no knowledge that an investigation was underway*, he

did not subvert the investigation by his act, and he did not effect a delay in the prosecution of his crime" (emphasis added)).

This Oppedahl reasoning is consistent with the direction of our Luna and Wilson decisions, and we too believe that the obstruction of justice enhancement should apply only to those cases where misconduct occurs with the defendant's knowledge of an investigation, or at least with the defendant's correct belief that an investigation is probably underway. Thus, we find that the obstruction of justice enhancement involves both a temporal requirement and an awareness requirement -- requirements that reflect the notion that once government action has been initiated, and an individual is aware of such action, we expect and encourage that individual to cooperate and to comply with the authorities, and that cooperation and compliance includes the cessation of any conduct that facilitates the successful completion of a crime.[5]

As mentioned, in the instant case, the PSR noted that "[s]ubsequent to defendant Lister requesting identification of

---

[5] In this respect, the cases cited by the government from this circuit are inapposite, as they all involve contested conduct when the defendant knew that the authorities were investigating or seeking to inquire about certain behavior. The government's cases emphasize that at the time of the obstructive conduct, the authorities were actually investigating an offense other than the eventual offense of conviction on which the enhancement was applied. This distinction, however, is not relevant to the awareness requirement, as flouting authority after an individual possesses an awareness of the involvement of the authorities is the type of conduct that the enhancement focuses upon, regardless of the specific behavior that got the authorities involved in the first place. The government's distinction may be relevant to whether the temporal requirement is satisfied, but that question is not before us in this case, and we express no opinion on the issue.

[Demond], ***he stated that he believed that [Demond] might be a police officer***" (emphasis added). Lister then made his threatening statements to Demond. In addition, the PSR later noted that "[t]he defendant made specific threats to [Demond] when he suspected that [she] might be an undercover officer." The district court adopted these findings, and they clearly indicate that Lister made his threatening statements with a belief that an investigation was probably underway. Because Lister was correct in this belief, the district court did not err in imposing the enhancement.[6]

## C. Acceptance of Responsibility

Lister contends that he should have received a downward adjustment for acceptance of responsibility, and he argues that he was improperly denied such an adjustment because of the district court's erroneous obstruction of justice finding. As we observed in <u>United States v. Cartwright</u>, 6 F.3d 294, 304 (5th Cir. 1993), <u>cert. denied</u>, 115 S. Ct. 671 (1994), we have applied various standards to reviewing a district court's refusal to credit acceptance of responsibility: clearly erroneous, without

---

[6]     In <u>United States v. Roberson</u>, 872 F.2d 597, 609 (5th Cir.), <u>cert. denied</u>, 493 U.S. 861 (1989), we observed that "[a]lthough section 3C1.1 does not expressly require a link between the offense of conviction and the obstruction, it refers to a defendant's efforts to obstruct the `instant offense.' This reference arguably requires a nexus between the obstruction and the offense at issue." Despite Lister's attempts to separate the count that he pled guilty to and the threats that he made to Demond, it is clear that the threat to Demond was designed to intimidate her and to prevent her from telling the authorities about **any** of Lister's drug transactions, and we refuse to find that the threat was limited only to a particular drug transaction at a particular day and time. A nexus between the threat and the count of conviction, if required, is clearly present in this case.

12

foundation, and great deference.  We noted, however, that "[t]here appears to be no practical difference between the three standards."  Id.  Regardless of the formulation, the sentencing guidelines indicate that "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility."  U.S.S.G. § 3E1.1 (commentary).

According to the Sentencing Guidelines, "[a] defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right."  Id.  One of the considerations in determining whether a defendant qualifies for an acceptance of responsibility deduction is "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility."  Id.  Similarly, "[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse."  Id.

In denying an adjustment for acceptance of responsibility, the district court did not rely solely on the obstruction of justice findings.  The PSR stated that "the defendant put the Government to it's [sic] burden of proof at trial and did not enter a guilty plea until the closing statements at trial.  This does not appear to meet the criteria for the two-level reduction for acceptance of responsibility."  The district court accepted the PSR's findings, and we cannot say that the findings are "without foundation" or are "clearly erroneous."  See United States v. Diaz, 39 F.3d 568, 572 (5th Cir. 1994) (denying an acceptance of responsibility

13

adjustment, in part because "Defendants waited until the morning of trial to enter plea negotiations"); <u>United States v. Wilder</u>, 15 F.3d 1292, 1299 (5th Cir. 1994) (denying an acceptance of responsibility adjustment, in part because the defendant "did not agree to plead guilty until the eve of trial, thereby putting the government to much effort and expense preparing for trial").  In the instant case, Lister did not plead guilty and accept responsibility until he had put the government to its proof, and we see no reason to disturb the district court's denial of a downward adjustment.

### III.  CONCLUSION

For the foregoing reasons, the sentence imposed by the district court is AFFIRMED.

14