# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 5, 2012

No. 11-10430

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

GEORGE BRENT CHIVERS,

Defendant – Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:10-CR-35-3

Before DAVIS, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant George Chivers ("Chivers") appeals his conviction and sentence for conspiracy, mail fraud, and aiding and abetting. He contends on appeal that he was improperly joined with defendants with whom he did not participate in a conspiracy; that insufficient evidence supported his conviction; that the district court improperly admitted an exhibit into evidence; and that the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-10430

district court erred in applying a four-level "aggravating-role" enhancement under U.S.S.G. § 3B1.1 and a two-level obstruction-of-justice enhancement under U.S.S.G. § 3C1.1.  We VACATE and REMAND for resentencing on the obstruction enhancement, but AFFIRM on all other issues.

## I. Facts and Procedural History

Over a period of two years, Zurich American Insurance Company ("Zurich"), Hartford Lloyds Insurance Company ("Hartford"), and Continental Casualty Company received, processed, and investigated seven, nearly-identical commercial insurance claims involving the theft of telemarketing equipment known as "autodialers" from the vehicles of Chivers, his wife Sherrion Chivers ("Sherrion"), Flynn Patrick Singleton ("Singleton"), and Singleton's mother, Ernestine Singleton-Davis ("Davis").  Upon noticing the similarity of several claims, Zurich and Hartford referred the claims to their respective investigative units.  The subsequent investigations ultimately discovered that the invoices submitted in support of the claims were fake.

A grand jury charged Chivers, Sherrion, Singleton, and Davis in a five-count indictment for conspiracy to commit mail fraud and the substantive offense of mail fraud.  Count One charged all four defendants with conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349.  The remaining counts charged mail fraud and aiding and abetting, in violation of 18 U.S.C. §§ 1341 and 1342: Davis and Singleton were charged in Counts Two and Three.  All four defendants were charged in Count Four.  Chivers, Singleton, and Sherrion were charged in Count Five.  Singleton pled guilty to one count of mail fraud and aiding and abetting, and Davis pled guilty to a one-count superseding information for making a false statement in violation of 18 U.S.C. § 1001.

Chivers and Sherrion proceeded to trial, where Singleton testified that the insurance scheme stemmed from a discussion with Chivers regarding an article about insurer reimbursement.  Singleton admitted to creating the fictitious

2

invoices at Chivers's request.  Singleton also conceded that he created a shell company, in part, to generate false invoices that he could use as replacement invoices for portions of the claims.  Singleton further testified that he had discussions with Chivers regarding each of the autodialer burglaries.

Besides Singleton's testimony and the insurance and Post Office investigations' findings, the evidence against Chivers included claim files, proof-of-loss forms, autodialer invoices, and commercial policies.  The Government also offered Exhibit 59, a timeline of events that summarized much of this evidence.

Chivers and Sherrion were convicted on all counts charged.  The district court sentenced Chivers to 57 months' imprisonment on each count, to be served concurrently, followed by three years of supervised release.  Chivers timely appealed.

## II. Procedural and Evidentiary Arguments

We begin by briefly addressing—and rejecting—three of Chivers's issues on appeal.  Chivers first argues that the evidence introduced at trial established that Singleton was part of a separate conspiracy with Davis that did not include Chivers, and, accordingly, that the evidence of that conspiracy prejudiced Chivers's defense.  Because Chivers failed to raise this issue before the district court, we review for plain error.  *See, e.g.*, *Puckett v. United States*, 556 U.S. 129, 135 (2009).  The evidence at trial linked Chivers to Singleton and Davis, and Chivers was charged with and convicted of conspiracy.  We thus find no error in the district court's joinder of Chivers, Singleton, and Davis in the same criminal action.  In any event, Chivers makes no effort to explain why the evidence introduced at trial—at which only Chivers and Sherrion were tried—prejudiced his substantial rights.  We affirm the district court on this issue.

Chivers next contends—in two conclusory sentences—that insufficient evidence supported his conviction.  Because he provides no explanation in support of this argument, we consider it abandoned.  *United States v. Stalnaker*,

No. 11-10430

571 F.3d 428, 434 (5th Cir. 2009) ("Where a defendant asserts 'that the evidence was insufficient to convict him' but fails 'to make *any argument whatsoever* to support this contention,' the issue is considered abandoned.") (citation omitted). In any case, there was plenty of evidence against Chivers.

Chivers asserts in his final evidentiary objection that the district court erred in admitting Exhibit 59's timeline of events.  We review challenges to a district court's evidentiary rulings for abuse of discretion, "but affirm so long as any error is harmless." *United States v. Bishop*, 264 F.3d 535, 546 (5th Cir. 2001).  To prevail, Chivers "must demonstrate that the district court's ruling caused him substantial prejudice." *Id.*

"Rule 1006 [of the Federal Rules of Evidence] allows admission of summaries when (1) the evidence previously admitted is voluminous, and (2) review by the jury would be inconvenient." *Id.* at 547.  "Summary charts in particular are admissible when (1) they are based on competent evidence already before the jury, (2) the primary evidence used to construct the charts is available to the other side for comparison so that the correctness of the summary may be tested, (3) the chart preparer is available for cross-examination, and (4) the jury is properly instructed concerning use of the charts." *Id.*

We discern no abuse of discretion in the district court's admission of Exhibit 59.  The Government used Exhibit 59 to summarize claim records and policy documents that totaled approximately 1,900 pages and were not subject to convenient in-court examination.  This evidence was already before the jury and was also available to Chivers.  Furthermore, the chart's preparer testified regarding Exhibit 59, and thus was available for cross-examination. Finally, the district court instructed the jury that Exhibit 59 was not independent evidence, was admitted to assist them in summarizing other evidence, and was to be disregarded if the jury found it to be inaccurate.  Accordingly, we find no reversible error in the district court's ruling on this issue.

No. 11-10430

### III. Sentencing Enhancements

We now turn to Chivers's two sentencing-related arguments. "This court reviews de novo the district court's guidelines interpretations and reviews for clear error the district court's findings of fact." *United States v. Miller*, 607 F.3d 144, 147 (5th Cir. 2010) (citation omitted). If a factual finding is plausible in light of the entire record, it is not clearly erroneous. *United States v. Brooks*, 681 F.3d 678, 712 (5th Cir. 2012). "A factual finding is clearly erroneous only if, based on the entirety of the evidence, the reviewing court is left with the definite and firm conviction that a mistake has been made." *Id.* Whether certain factual findings are amenable to an enhancement's application, however, is a question of law reviewed de novo. *Miller*, 607 F.3d at 148.

We begin with Chivers's objection to the four-level role enhancement under U.S.S.G. § 3B1.1. The district court found that Chivers acted in a leadership capacity by exercising a higher degree of decision-making authority and by taking a more active role in the conspiracy than his wife. *See* U.S.S.G. § 3B1.1(a) & cmt. n.4. The district court based these findings on specific instances of Chivers's criminal activity and on statements made by Sherrion to a postal inspector. The district court also found that the Chiverses engaged in "extensive" criminal activity. *Id.* § 3B1.1(a).

We affirm the district court's application of this enhancement. The record does not establish that the district court clearly erred in finding that Chivers acted in a leadership capacity over Sherrion, even if he did not exercise such authority over Singleton.[1] Chivers, moreover, makes no arguments against the district court's finding that the Chiverses engaged in "extensive" criminal activity. *Id.* (providing that the four-level enhancement applies if the "criminal activity" involved "five or more participants *or* was otherwise extensive")

---

[1] A conspiracy may have multiple "leaders" or "organizers." U.S.S.G. § 3B1.1 cmt. n.4.

(emphasis added). Accordingly, we conclude that the district court did not err in applying the aggravating-role enhancement.

We reach a different conclusion, however, in regard to the district court's application of a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1, which provides for an enhancement where:

> (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense . . . .

Chivers's Pre-Sentence Report ("PSR") noted that "[d]uring a two-hour examination under oath conducted by attorneys for Zurich," Chivers "was untruthful concerning his statement[s] that he paid . . . with a cashier's check for the autodialers," that the autodialers cost $25,000 each, and that he had loaded the autodialers into his vehicle. The examination occurred during Zurich's private, claims-processing investigation into Chivers's first fraudulent claim, and was unrelated to any then-existing criminal investigation. Zurich ultimately paid Chivers approximately $30,000 on his roughly $82,500 claim.

The PSR justified application of § 3C1.1 by citing commentary explaining that the enhancement is warranted if the defendant committed perjury "during the course of a civil proceeding if such perjury pertains to conduct that forms the basis of the offense of conviction." U.S.S.G. § 3C1.1 cmt. n.4(B).[2] The PSR reasoned that, because Chivers "was convicted of fraudulent activity in connection with the autodialers, his testimony under oath during Zurich's insurance investigation [was] relevant conduct to the offense of conviction."

---

[2] Note 4 provides "a non-exhaustive list of examples of the types of conduct to which this enhancement applies." U.S.S.G. § 3C1.1 cmt. n.4.

No. 11-10430

The district court followed this line of reasoning and determined that § 3C1.1 applied, finding that Chivers's "false statements did hamper or thwart Zurich's ability to identify when and if the autodialers were actually purchased." The district court believed that "the statement taken by [Zurich] under oath does fall within [the] type of statement or type of proceeding contemplated under the applicable provision of the sentencing guidelines." That is, the district court interpreted § 3C1.1 to permit an obstruction enhancement if a defendant's perjury impeded a private civil investigation, so long as the subject matter of that investigation later relates in some way to the offense of conviction.[3]

This interpretation is inconsistent with other parts of § 3C1.1. Where possible, we must harmonize Guidelines and their commentary. *See, e.g.*, *United States v. Pedragh*, 225 F.3d 240, 244-45 (2d Cir. 2000); *United States v. Guerra*, 962 F.2d 484, 486 (5th Cir. 1992); *see generally Stinson v. United States*, 508 U.S. 36 (2000). Here, that requires reading Note 4(B) in light of "temporal" and "awareness" requirements found elsewhere in § 3C1.1. *United States v. Lister*, 53 F.3d 66, 71 (5th Cir. 1995); *see also Guerra*, 962 F.2d at 486 ("Obviously, even if never cited by a party, we can—indeed must—consider the commentary to the guideline used by the district court.").

As noted above, the obstruction enhancement requires a defendant to have "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to *the investigation* . . . of the *instant offense* of conviction." U.S.S.G. § 3C1.1 (emphasis added). To bring "[o]bstructive conduct that occurred prior to the start of the investigation of the instant offense" within § 3C1.1's ambit, the conduct must have been

---

[3] Chivers does not address whether a private insurance investigation and concomitant examination under oath is a "civil proceeding" within the meaning of § 3C1.1. Because we decide this issue on other grounds, we need not reach this question. We will assume, without deciding, that it is.

No. 11-10430

"purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction."[4] *Id.* § 3C1.1 cmt. n.1. Although the Guideline does not define "investigation," our jurisprudence provides that the investigation, whether civil or criminal, must either be government-led or have some expected connection to a government-led investigation.

Our recent decision in *Brooks* is instructive. 681 F.3d 678. *Brooks* concerned three defendants convicted of violating the Commodities Exchange Act and committing wire fraud for their attempts to manipulate the natural gas market. *Id.* at 684-85. The defendants' employer and its parent company had become the target of several state and federal agencies' investigations, as well as a United States Attorney's Office grand jury subpoena. *Id.* at 686. In response, the parent company hired outside counsel to conduct an internal investigation. *Id.* The defendants participated in the internal investigation and were aware of the government investigations when they did so. *Id.* at 686-87.

The *Brooks* district court found that the defendants "provided materially false information to the investigating government officials because they [misled] the individuals involved in [the parent company's] internal investigation." *Id.* at 716. Based on that finding, it applied obstruction enhancements to each defendants' offense level. On appeal, the defendants argued that the enhancement did not apply because their false statements "occurred before any government investigation started, . . . were not made directly to government agents, and . . . did not actually impede the investigation." *Id.* at 716.

---

[4] Chivers uses language from Note 1 in his brief without actually citing Note 1. The Government makes no reference to Note 1, arguing almost exclusively under Note 4(B). Indeed, the Government in its brief says that the perjury's "effect on [the postal inspector's] investigation . . . does not form the basis of the [obstruction] enhancement," and it makes no argument that such perjury was an attempt to impede that investigation. As we explain below, it is not enough simply to show that the perjury "pertains" to the offense of conviction.

No. 11-10430

We disagreed. We affirmed an obstruction enhancement as to one defendant whom the record showed also destroyed documents during a related state civil investigation. Our discussion noted that the relevant Guidelines then in effect "did not require the investigation to be led by the federal government, or to be a criminal investigation, *so long as it was led by government officials*." *Id.* at 716 n.43 (emphasis added); *accord United States v. Emery*, 991 F.2d 907, 911-12 (1st Cir. 1993).[5]

We also upheld enhancements for two other defendants who lied to outside counsel during the parent company's internal investigation. *Brooks*, 681 F.3d at 717. "[A]lthough the statements were not made directly to government officials," we affirmed the *Brooks* district court's finding "that they were made with intent to be communicated to government officials, and thus impede the investigation into their wrong-doing." *Id.* We emphasized that the defendants knew that the internal investigation was in response to specific inquiries from the CFTC, the Federal Energy Regulatory Commission, and the United States Attorney's Office. *Id.*; *see also id.* at 688 (noting that the defendants participated in an internal email discussion that referenced the ongoing investigations and the corresponding need to avoid discussing certain matters in writing).

---

[5] A subsequent amendment to § 3C1.1 did not alter this requirement. In 2006, the Sentencing Commission amended § 3C1.1 to read "with respect to the investigation," instead of "during the course of the investigation." U.S.S.G. app. C, Vol. III, amend. 693 (2011) (the "Amendment"). The Commission made this change so that courts may consider conduct that occurred prior to an investigation, but it gave no indication of an intent to discard the requisite link between a government investigation and the obstructive conduct. *See id.* Indeed, the Amendment altered Note 1 to provide that obstructive conduct occurring before the start of the investigation, "may be covered . . . if the conduct was purposefully calculated, and likely, to thwart *the investigation* or prosecution of the instant offense." *Id.* (emphasis added).

The Amendment also added the part of Note 4(B) at issue here. Before 2007, Note 4(B) discussed only "committing, suborning, or attempting to suborn perjury." *See, e.g.*, U.S.S.G. § 3C1.1 cmt. n.4(B) (2004). The Amendment inserted the clause "during the course of a civil proceeding if such perjury pertains to conduct that forms the basis of the offense of conviction." U.S.S.G. § 3C1.1 cmt. n.4(B) (2010); *see also* U.S.S.G. app. C, Vol. III, amend. 693.

9

No. 11-10430

Impeding a private civil investigation like Zurich's without some contemporary nexus to a government-led investigation, then, by itself does not justify an obstruction of justice enhancement.[6] To be clear, committing perjury during a private civil proceeding initiated prior to a government-led investigation may support an obstruction enhancement, but only if the private investigation had some existing or expected connection to the later government inquiry and the perjury was "purposefully calculated . . . to thwart [that] investigation or prosecution of the offense of conviction." U.S.S.G. § 3C1.1 cmt. n.1. It is not enough to show that the obstructive conduct simply impeded a civil investigation that later turns out to relate (or lead) to a government investigation and an offense of conviction. *See United States v. Zagari*, 111 F.3d 307, 329 (2d. Cir. 1997) ("Just because perjured testimony is given in a related action, and simply because that testimony is found to have been material to the related proceeding, does not mean that the statements are material to the instant [criminal] proceeding."); *cf. Lister*, 53 F.3d at 71 (explaining that § 3C1.1's requirements "reflect the notion that once government action has been initiated, and an individual is aware of such action, we expect and encourage that individual to cooperate and to comply with the authorities, and that cooperation and compliance includes the cessation of any conduct that facilitates the successful completion of a crime").

The lies Chivers told under oath are part of the original crime, rather than its cover-up. Thus, the outcome here might be different if, for example, Chivers

---

[6] Other circuit cases are not to the contrary. *See United States v. DeGeorge*, 380 F.3d 1203,1222 (9th Cir. 2004) ("[T]he Defendant's perjury occurred during the *civil* trial as part of his scheme to defraud and not during the *criminal* investigation as part of an attempt to obstruct justice." (Note 8 context)); *United States v. Fiore*, 381 F.3d 89, 94 (2d Cir. 2004) (finding an SEC civil investigation into conduct giving rise to a later criminal charge was sufficient to render obstructive conduct relevant for sentencing); *United States v. McGovern*, 329 F.3d 247, 253 (1st Cir. 2003) (concluding that there was a "common-sense connection" between the obstruction of Medicare and Medicaid audits and Medicare and Medicaid fraud).

lied under oath during a private investigation initiated *after* Zurich paid his claim. Chivers's lies then would no longer simply be an effort to see his original fraudulent act through to fruition—obtaining payment on the bogus insurance claim. At that point, the perjury would instead be reasonably characterized as "purposefully calculated and likely" to forestall and impede an expected criminal investigation. *See Lister*, 53 F.3d at 71 (reasoning "that the obstruction of justice enhancement should apply only to those cases where misconduct occurs with the defendant's knowledge of an investigation, or at least with the defendant's correct belief that an investigation is probably underway"); *cf. United States v. Wilson*; 904 F.2d 234, 235 (5th Cir. 1990) ("[The defendant's] intent clearly was not to impede the investigation or prosecution of his offense. His intent was to disguise himself in such a way so that his crime would go unpunished. At that he was unsuccessful, and he deserves to be punished for his underlying offense. An increase in his offense level is, however, unwarranted.").[7]

In applying the obstruction enhancement here, the district court made no finding that Chivers's perjury was purposefully calculated and likely to impede the mail fraud investigation or that Chivers knew that Zurich's findings—like the results of the internal investigation in *Brooks*—were intended to be communicated to government officials for use in a government-led investigation.[8]

---

[7] The defendant in *Wilson* was under government investigation during the relevant time period, but he "was unaware that any investigation was taking place and prosecution had not yet begun." 904 F.2d at 235.

[8] *See Fiore*, 381 F.3d at 94-95 ("Where federal administrative and prosecutorial jurisdiction overlap, subsequent criminal investigations are often inseparable from prior civil investigations, and perjury in the prior proceeding necessarily obstructs—if successful, by preventing—the subsequent investigation. Securities fraud is a proper subject of both administrative and criminal investigations, and whether the administrative enforcement officials proceed before, after, or simultaneously with criminal prosecutors is often determined by fortuitous circumstances regarding possession of particular evidence, available resources, and legal issues, such as statutes of limitation. . . . SEC enforcement officials and prosecutors all expect coordination at some investigative level and perceive the various proceedings as integral to each other. A subject of the investigations will also view each as a different facet

No. 11-10430

The district court instead based application of the enhancement solely on Chivers's perjury impeding Zurich's claims-processing investigation, and the Government urges that we do the same. Under the analysis above, however, that is not a proper basis for an obstruction enhancement under § 3C1.1. Accordingly, we AFFIRM Chivers's conviction, VACATE his sentence, and REMAND to the district court for resentencing.

AFFIRMED in part, VACATED and REMANDED in part.

---

of one problem. For example, a subject who decides upon perjury in an SEC proceeding will do so principally because the goal is to avoid all liability or criminal liability in particular.").